PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

GRACE LONTZ; BEVERLY PETTIT,
    *Plaintiffs-Appellants,*

v.

JOYCE THARP; ELIZABETH DOAK;
JAMES BAISH; SANDEEP THAKRAR;
MONICA, LLC, d/b/a Holiday Inn
Express,
    *Defendants-Appellees.*

No. 04-1967

Appeal from the United States District Court
for the Northern District of West Virginia, at Wheeling.
Frederick P. Stamp, Jr., District Judge.
(CA-03-260-5)

Argued: March 17, 2005

Decided: July 1, 2005

Before WILKINSON, LUTTIG, and TRAXLER, Circuit Judges.

---

Vacated and remanded with instructions by published opinion. Judge
Wilkinson wrote the opinion, in which Judge Luttig and Judge Trax-
ler joined.

---

## COUNSEL

**ARGUED:** Paul Joseph Harris, Wheeling, West Virginia, for Appel-
lants. Mario Richard Bordogna, STEPTOE & JOHNSON, Clarks-
burg, West Virginia, for Appellees. **ON BRIEF:** John R. Merinar, Jr.,
STEPTOE & JOHNSON, Clarksburg, West Virginia, for Appellees.

**OPINION**

WILKINSON, Circuit Judge:

The phrase "complete preemption" has become a term of art. It refers to that "small category of statutes that . . . 'authoriz[e] removal of actions that sought relief only under state law.'" *Alongi v. Ford Motor Co.*, 386 F.3d 716, 724 (6th Cir. 2004) (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6-7 (2003)). In this case we consider whether state wrongful discharge claims are completely preempted by the National Labor Relations Act, 29 U.S.C. §§ 157, 158 (2000). We conclude that they are not. We express no view as to whether such claims on the merits are preempted by federal law, as this is a question for state courts to resolve. We accordingly vacate the judgment of the district court and remand with instructions to remand the case in turn to state court.

I.

Grace Lontz and Beverly Pettit were employed as hotel supervisors at a Holiday Inn Express in Dallas Pike, West Virginia. Some of the employees at the hotel initiated union-organizing activities in 2003. Pettit alleges that management, convinced that she had assisted and encouraged the activities, fired her on July 2, 2003.

Lontz alleges that members of management "met with [her] and instructed her to seek the assistance of a deputy sheriff, (a friend of [hers]) and have a union organizer arrested." Lontz refused. Thereafter, she claims, management "created an intolerable work environment" for her. Lontz says that she resigned on October 8, 2003, for this reason.

Later in October, Lontz and Pettit jointly brought suit in West Virginia state court, naming as defendants their former employer, Monica, LLC (the entity operating the Holiday Inn Express), and four members of its management. Plaintiffs' claims sounded entirely in state law. Pettit and Lontz alleged respectively wrongful discharge and constructive discharge "in violation of the public policy of the State of West Virginia" and contrary to W. Va. Code § 21-1A-1

(Michie 2002). Lontz also alleged a violation of the West Virginia Wage Payment and Collection Act, W. Va. Code § 21-5-1 et seq.*

Defendants removed the case to the U.S. District Court for the Northern District of West Virginia. They subsequently filed a motion to dismiss, and the plaintiffs filed a motion to remand the case to state court. On July 1, 2004, the district court dismissed the wrongful and constructive discharge claims but remanded the statutory wage payment claim. The district court concluded that the discharge claims were not brought under state law, but rather alleged violations of sections 7 and 8 of the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 157, 158 (2000), which it felt sufficient for federal jurisdiction. In other words, the district court concluded that the putative state law claims were completely preempted by the NLRA. It was on this basis that the district court noted that the complaint "allege[d] violations of federal law," making removal jurisdiction proper. Having assumed jurisdiction on these grounds, the district court further observed that claims under sections 7 and 8 are channeled exclusively to the NLRB. The court therefore dismissed the discharge claims.

Lontz and Pettit timely filed a notice of appeal. They argue that the case was improperly removed, and therefore seek a remand to the state court in which the claims were filed. Like all questions implicating the subject matter jurisdiction of the federal courts, we review de novo the denial of a motion to remand to state court. *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 815-16 (4th Cir. 2004) (en banc); *Sonoco Prods. Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 370 (4th Cir. 2003). In particular, "[w]e review de novo the question of whether Plaintiffs' state law claims are completely preempted." *Felix v. Lucent Techs., Inc.*, 387 F.3d 1146, 1153 (10th Cir. 2004).

---

*Lontz and Pettit also filed charges with the NLRB. They later concluded that as supervisory employees they lacked a remedy under the NLRA and that they therefore had been in error to file the charges. They withdrew them, and the regional director of the NLRB wrote to the employer in February 2004 noting that the charges had, "with [his] approval, been withdrawn." The district court found NLRA preemption regardless of the plaintiffs' status as supervisory employees. We decline to address this question or to speculate on the effect of the withdrawn charges because our jurisdictional resolution renders these issues irrelevant.

## II.

Because this case began in state court, our jurisdiction depends on the propriety of removal, which in turn depends on the scope of the district court's original jurisdiction. This is because the removal statute allows defendants to remove a case to federal court only if "the district courts of the United States have original jurisdiction" over it. 28 U.S.C. § 1441(a) (2000); *Rivet v. Regions Bank of La.*, 522 U.S. 470, 474 (1998). The question, then, is "whether [this] claim could have been brought originally in federal district court." *King v. Marriott Int'l, Inc.*, 337 F.3d 421, 424 (4th Cir. 2003). To answer it, we observe that § 1441 generally makes removal appropriate in three circumstances, demonstration of which is the burden of the party seeking removal. *See Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994).

First, a defendant may remove a case to federal court if the parties are diverse and meet the statutory requirements for diversity jurisdiction. *See* 28 U.S.C. §§ 1332, 1441(b) (2000); *Richardson v. Kruchko & Fries*, 966 F.2d 153, 155 (4th Cir. 1992) (federal jurisdiction over claim of retaliatory discharge for pro-union activities "based on diversity of citizenship"). Since diversity always vests original jurisdiction in the district courts, diversity also generates removal jurisdiction.

Second, removal is appropriate if the face of the complaint raises a federal question. *See* § 1441(b); *King*, 337 F.3d at 424. Under the firmly settled well-pleaded complaint rule, however, merely having a federal defense to a state law claim is insufficient to support removal, since it would also be insufficient for federal question jurisdiction in the first place. *See Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152 (1908); *King*, 337 F.3d at 424. Thus, the Supreme Court unwaveringly has maintained that "[t]o bring a case within [§ 1441], a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." *Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936).

The third justification for removal is actually a narrow exception to the well-pleaded complaint rule. "[K]nown as the 'complete preemption' doctrine," *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987), it provides that if the subject matter of a putative state law

claim has been totally subsumed by federal law — such that state law cannot even treat on the subject matter — then removal is appropriate. *See Aetna Health Inc. v. Davila*, 124 S. Ct. 2488, 2494-95 (2004); *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 23-24 (1983); *King*, 337 F.3d at 424-25. Although completely preempted claims are rare, they are held to satisfy the well-pleaded complaint requirements of *Mottley* and *Gully*.

Neither party believes that diversity exists or that the complaint explicitly raises a federal question. We therefore turn to complete pre-emption.

## III.

We have noted our obligation "to construe removal jurisdiction strictly because of the 'significant federalism concerns' implicated" by it. *Maryland Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 260 (4th Cir. 2005) (quoting *Mulcahey*, 29 F.3d at 151). "Federalism concerns strongly counsel against imputing to Congress an intent to displace a whole panoply of state law . . . absent some clearly expressed direction." *Custer v. Sweeney*, 89 F.3d 1156, 1167 (4th Cir. 1996) (internal quotes omitted). Consistent with these principles, we have recognized that state law complaints usually must stay in state court when they assert what appear to be state law claims. *See, e.g.*, *Harless v. CSX Hotels, Inc.*, 389 F.3d 444, 450 (4th Cir. 2004); *King*, 337 F.3d at 424; *Darcangelo v. Verizon Communications, Inc.*, 292 F.3d 181, 186 (4th Cir. 2002); *Cook v. Georgetown Steel Corp.*, 770 F.2d 1272, 1274 (4th Cir. 1985). The presumption, in other words, is against finding complete preemption. *Custer*, 89 F.3d at 1167.

But that presumption is rebuttable, because federal law occasion-ally "displace[s] entirely any state cause of action." *Franchise Tax Board*, 463 U.S. at 23. When it does, federal law then "provide[s] the exclusive cause of action for such claims," and therefore "there is . . . no such thing as a state-law claim" in the regulated area. *Beneficial*, 539 U.S. at 11. The doctrine of complete preemption thus prevents plaintiffs from "defeat[ing] removal by omitting to plead necessary federal questions." *Franchise Tax Board*, 463 U.S. at 22. It thereby ensures compliance with congressional intent that federal courts be available to resolve certain claims which are peculiarly national in

scope. Defendants' burden, then, is to demonstrate that a federal statute indisputably displaces any state cause of action over a given subject matter.

In assessing whether defendants have carried their burden, we may not conflate "complete preemption" with "conflict" or "ordinary" preemption. While these two concepts are linguistically related, they are not as close kin jurisprudentially as their names suggest. Complete preemption is a "jurisdictional doctrine," while ordinary preemption simply declares the primacy of federal law, regardless of the forum or the claim. *Sonoco Prods.*, 338 F.3d at 370-71. Ordinary preemption has been categorized as a federal "defense to the allegations." *Caterpillar*, 482 U.S. at 392. And as a mere defense, the "preemptive effect of a federal statute . . . will not provide a basis for removal." *Beneficial*, 539 U.S. at 6 (internal citations omitted). *See also Rivet*, 522 U.S. at 475-76; *Caterpillar*, 482 U.S. at 392-93; *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987) ("even an 'obvious' pre-emption defense does not, in most cases, create removal jurisdiction"); *Franchise Tax Board*, 463 U.S. at 14, 28. Even if preemption forms the very core of the litigation, it is insufficient for removal. *Caterpillar*, 482 U.S. at 393.

By contrast, when complete preemption exists, there is "no such thing" as the state action, *Beneficial*, 539 U.S. at 11, since the federal claim is treated as if it appears on the face of the complaint because it effectively displaces the state cause of action. Complete preemption thus "transform[s] the plaintiff's state-law claims into federal claims." *Rivet*, 522 U.S. at 476. Since the complaint is then understood to state a federal question, the well-pleaded complaint rule is satisfied, thereby justifying removal under § 1441(b).

Recognizing that complete preemption undermines the plaintiff's traditional ability to plead under the law of his choosing, the Supreme Court has made clear that it is "reluctant" to find complete preemption. *Metro. Life*, 481 U.S. at 65. The Court has, in fact, found complete preemption in only three statutes. *See Beneficial*, 539 U.S. at 10-11 (National Bank Act); *Metro. Life*, 481 U.S. at 66-67 (ERISA § 502(a)); *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists*, 390 U.S. 557, 560 (1968) (Labor Management Relations Act ("LMRA") § 301). Unsurprisingly, therefore, the Court has articulated

exacting standards that must be met before it will find complete preemption. Most notably, the congressional intent that state law be entirely displaced must be clear in the text of the statute. *See Metro. Life*, 481 U.S. at 65-66.

In fact, the Court in *Beneficial* emphasized that the preempting statute must not only create a federal cause of action, but must also show that Congress intended it to "provide *the exclusive* cause of action" for claims of overwhelming national interest. *Beneficial*, 539 U.S. at 9, 11 (emphasis added). In finding that the National Bank Act completely preempted state law governing interest rates, *Beneficial* stressed that national banks were the subject of unique national concern. Such banks are, after all, chartered at the national level and explicitly not governed by state law. *Id.* at 10. Under these circumstances, federal law alone regulates the interest charged by national banks, extinguishing — that is, completely preempting — state regulation of the same subject. *Id.* at 10-11.

This view of the complete preemption doctrine is consistent with our approach in *Rosciszewski v. Arete Associates, Inc.*, 1 F.3d 225 (4th Cir. 1993). In that case, we concluded that the Copyright Act, 17 U.S.C. § 301(a), completely preempted the state law claims that had been brought. We recognized, as *Beneficial* did in its context, the statutory text's insistence on exclusive, uniform national regulation of copyright. *Rosciszewski*, 1 F.3d at 229, 232. And like *Beneficial*, we made clear that "the focus of our inquiry must be congressional intent." *Id.* at 231.

Nothing in *Beneficial* or *Rosciszewski* altered the general principle that defendants seeking removal under the doctrine of complete preemption bear a significant burden. They must establish congressional intent to extinguish similar state claims by making the federal cause of action exclusive. And as we must construe removal strictly, reasonable doubts must be resolved against the complete preemption basis for it. *Maryland Stadium Auth.*, 407 F.3d at 260.

IV.

We now apply these standards to the present case. Defendants argue that the state court lacks jurisdiction because the state law

claims should be recharacterized as deriving from sections 7 and 8 of the National Labor Relations Act. Those provisions concern employees' protected "concerted activities," 29 U.S.C. § 157, and regulate the ability of employers or labor organizations to engage in "unfair labor practices," *id.* § 158.

Preemption under those sections is known as "*Garmon* preemption," named for the Supreme Court case which clarified that "[w]hen an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board . . . ." *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245 (1959). However, defendants' deployment of this principle proves too much. *Garmon* may strip state courts of adjudicatory authority, but in the very same breath it also deprives federal courts of that authority. Indeed, the same "exclusive competence" of the NLRB which divests state courts of original jurisdiction over claims subject to sections 7 and 8 also divests federal courts of such jurisdiction.

If this distinction amounted to deciding which court had the honor of dismissing the case, it might appear to be a dispute over trifles. But even if the structural allocation of authority could be dismissed as trivial, we think more is at stake. For instance, the removal-cum-dismissal urged by defendants is predicated on the assumption that sections 7 and 8 do in fact preempt the state law claims. But what if that assumption is faulty? *Garmon* itself made clear that not every state law claim that touches on sections 7 and 8 is in fact preempted. *See Garmon*, 359 U.S. at 247-48; *see also Caterpillar*, 482 U.S. at 396 n.10. If it turned out that the plaintiffs' claims here are among those not preempted, removal and dismissal unconstitutionally deprive the plaintiffs of the opportunity to make their case, and deprive West Virginia of the right to vindicate its own non-preempted laws.

The district court held that this was one of those cases in which state law was indeed preempted. But that this conclusion had to be made is itself the best proof that strict adherence to the removal statute is more than mere formalism. The state court may, of course, ultimately share the district court's view. But its ability to determine its

own jurisdiction is a serious obligation, and not something that federal courts may easily take for themselves.

Fidelity to Supreme Court precedent and our own case law requires us to agree with our sister circuits that sections 7 and 8 do not completely preempt these claims. As noted, the sine qua non of complete preemption is a pre-existing *federal* cause of action that can be brought in the district courts. *Beneficial*, 539 U.S. at 9; *see also Metro. Life*, 481 U.S. at 63 (noting the "exclusive federal cause of action for resolution of such disputes"); *Franchise Tax Board*, 463 U.S. at 26 (contrasting a non-completely preemptive statute with LMRA § 301, which "expressly supplied the plaintiff in *Avco* with a federal cause of action to replace its" state law claim); *King*, 337 F.3d at 425 ("a vital feature of complete preemption is the existence of a federal cause of action that replaces the preempted cause of action").

Under this standard, sections 7 and 8 do not work to completely preempt the kind of state law claims that plaintiffs are pressing. Indeed, the contrast between sections 7 and 8 of the NLRA and provisions of the statutes with complete preemptive force is unmistakable. For instance, section 301 of the LMRA explicitly "provides that the *federal district courts* have plenary jurisdiction, without regard to citizenship or amount in controversy . . . ." *Alongi*, 386 F.3d at 723 (emphasis added); *see also Childers v. Chesapeake & Potomac Tel. Co.*, 881 F.2d 1259, 1262 (4th Cir. 1989) (noting that section 301 provides federal jurisdiction). Similarly unlike sections 7 and 8, "[s]ection 502 of ERISA creates a civil cause of action," *King*, 337 F.3d at 426, necessary for the complete preemption deriving from that provision. And the National Bank Act, 12 U.S.C. § 86 (2000), provides a cause of action for "a usury claim against a national bank." *Beneficial*, 539 U.S. at 9. In this case, we cannot find complete preemption if for no other reason than that Congress has not chosen to create a cause of action.

Other courts have considered the completely preemptive effect of sections 7 and 8 and "are uniform in finding that *Garmon* preemption under the NLRA does not completely preempt state laws so as to provide removal jurisdiction." *Felix*, 387 F.3d at 1166. "[S]tate law actions claimed to be preempted by sections 7 and 8 of the NLRA are not removable to federal court." *Ethridge v. Harbor House Rest.*, 861

F.2d 1389, 1400 (9th Cir. 1988) (footnote omitted). "Nothing in the history of the *Garmon* doctrine suggests that state courts are incapable of determining their own jurisdiction." *Id.* To the contrary, "*Garmon*-preemption analysis is one that the state courts are to undertake in the first instance." *Id.*; *see also Felix*, 387 F.3d at 1165-66 ("*Garmon* pre-emption does not provide a basis for removal jurisdiction."); *Alongi*, 386 F.3d 716, 723 (6th Cir. 2004) (same); *Kline v. Sec. Guards, Inc.*, 386 F.3d 246, 262 (3d Cir. 2004) (same); *United Ass'n of Journeymen & Apprentices v. Bechtel Power Corp.*, 834 F.2d 884, 886-87 (10th Cir. 1987) (same); *Sandoval v. New Mexico Tech. Group LLC*, 174 F. Supp. 2d 1224, 1233-35 (D.N.M. 2001) (same).

That Congress's allocation of authority to an agency and away from district courts defeats a complete preemption claim is further confirmed by the analogous situation in *Opera Plaza Residential Parcel v. Hoang*, 376 F.3d 831 (9th Cir. 2004). Section 207 of the Telecommunications Act of 1996 undeniably has preemptive effect, but violations of its rules are within the exclusive jurisdiction of the FCC. *Id.* at 838-39. In *Opera Plaza*, the Ninth Circuit concluded that Congress had not created a federal cause of action, *id.* at 838, and that complete preemption was therefore unavailable, *id.* at 839.

Because sections 7 and 8 do not create a cause of action, the Supreme Court has always assumed, as we now hold, that *Garmon* preemption is a matter for the state courts to determine in those cases where federal jurisdiction cannot be independently established by some other means. The Court has twice stated as much in resolving other issues. In *International Longshoremen's Association v. Davis*, 476 U.S. 380, 393 (1986), the Court noted that "when a claim of *Garmon* pre-emption is raised, it must be considered and resolved by the state court." In *Caterpillar*, the Court observed that "[t]he fact that a defendant might ultimately prove that a plaintiff's claims are preempted under the NLRA does not establish that they are removable to federal court." 482 U.S. at 398 (footnote omitted). It specifically noted that such preemption arguments "are questions that must be addressed in the first instance by the state court in which respondents filed their claims." *Id.* at 398 n.13.

### V.

Removal statutes do not create jurisdiction. They are instead a mechanism to enable federal courts to hear the cases that are already

within their original jurisdiction. *See Darcangelo*, 292 F.3d at 186. Even though their ordinary preemptive power is great, sections 7 and 8 do not on their own terms confer federal jurisdiction and therefore cannot be the basis of removal through complete preemption.

We therefore hold that the district court lacked subject matter jurisdiction over this case, and thus had no basis to permit removal under § 1441. We vacate the judgment of the district court and remand with instructions to remand the case to state court.

*VACATED AND REMANDED WITH INSTRUCTIONS*