**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 12-1304**

———————

COMMUNITY STATE BANK; COMPUCREDIT CORPORATION; VALUED
SERVICES, LLC; VALUED SERVICES OF NORTH CAROLINA, LLC;
FORESIGHT MANAGEMENT COMPANY, LLC,

> Plaintiffs – Appellants,

and

VALUED SERVICES AQUISITIONS COMPANY, LLC; VALUED SERVICES
FINANCIAL HOLDINGS, LLC; VALUED SERVICES HOLDINGS, LLC;
FIRST AMERICAN HOLDING, LLC; FIRST AMERICAN MANAGEMENT,
INC.; LARRY A. KUGLER; JAMES E. SCOGGINS; ROBERT P. MANNING,

> Plaintiffs,

> v.

TOMMY KNOX; VELMA KNOX; KERRY GORDON; WILLIE PATRICK,

> Defendants – Appellees.

———————

Appeal from the United States District Court for the Middle
District of North Carolina, at Greensboro.  James A. Beaty, Jr.,
Chief District Judge.  (1:05-cv-00226-JAB-LPA)

———————

Argued:  January 30, 2013          Decided:  April 11, 2013

———————

Before TRAXLER, Chief Judge, and GREGORY and DUNCAN, Circuit
Judges.

———————

Affirmed by unpublished opinion.  Judge Duncan wrote the
opinion, in which Chief Judge Traxler and Judge Gregory
concurred.

**ARGUED:** Jonathan Michael Watkins, MOORE & VAN ALLEN, PLLC, Charlotte, North Carolina, for Appellants. J. Jerome Hartzell, HARTZELL & WHITEMAN, LLP, Raleigh, North Carolina, for Appellees. **ON BRIEF:** Jennifer K. Van Zant, BROOKS PIERCE, MCLENDON, HUMPHREY & LEONARD, LLP, Greensboro, North Carolina, for Appellant Community State Bank; Thomas D. Myrick, Mark A. Nebrig, MOORE & VAN ALLEN, PLLC, Charlotte, North Carolina; J. Allen Maines, Tameka Phillips, PAUL HASTINGS LLP, Atlanta, Georgia, for Appellants Compucredit Corporation, Valued Services, LLC, Valued Services of North Carolina, LLC, and Foresight Management Company, LLC. Leslie A. Bailey, Amy Radon, PUBLIC JUSTICE, Oakland, California; Carlene McNulty, NORTH CAROLINA JUSTICE CENTER, Raleigh, North Carolina; Mallam J. Maynard, FINANCIAL PROTECTION LAW CENTER, Wilmington, North Carolina; Mona Lisa Wallace, John Hughes, WALLACE & GRAHAM, PA, Salisbury, North Carolina; Richard A. Fisher, RICHARD FISHER LAW OFFICE, Cleveland, Tennessee, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

DUNCAN, Circuit Judge:

This appeal arises from the district court's dismissal of a petition to compel arbitration of state-law claims brought by borrowers against payday loan servicers in state court (the "Petition"). We agree with the district court that neither the loan servicers nor the state-chartered bank that allegedly issued the loans (collectively, "Petitioners") has satisfied the requirements of the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 4, to bring the Petition in federal court, and affirm.

I.

A.

Tommy Knox, Velma Knox, and Kerry Gordon (collectively, "Knox") obtained short-term, or "payday" loans[1] from entities in North Carolina operating under the name First American Cash Advance (collectively, the "loan servicers"). Asserting harm

---

[1] "Payday lending" generally refers to transactions wherein a borrower writes a personal check to the lender for a small amount in exchange for cash in the amount of the check, less a fee, coupled with the lender's promise that the check will not be presented until a date in the near future. Often the lender is aware that the borrower's bank account does not have sufficient funds to cover the amount stated on the check, but nevertheless approves the transaction. In particular, the "fee" charged may be exorbitant, translating to a loan at an annual interest rate of over 300 percent. Because of the dangers to consumers and potential for predatory lending practices, many states have undertaken to regulate or eliminate such transactions.

from those transactions, Knox filed suit in state court against the loan servicers.  See Knox v. First Southern Cash Advance, No. 05-CVS-0445 (New Hanover County, N.C., filed Feb. 8, 2005) ("Knox").

The Knox complaint contains various factual allegations against the loan servicers, including improper deferred check presentment practices, solicitation of customers to write checks supported by insufficient funds, and charging illegal fees and interest rates.  According to the complaint, by purporting to do business as agents for Community State Bank ("CSB"), an out-of-state, state-chartered bank, the loan servicers were either (1) the "true lenders" on the loans issued to Knox, in which case they violated applicable North Carolina lending and usury laws; or (2) not the true lenders, in which case they engaged in unfair and deceptive trade practices, illegal efforts to evade state law, and activities as loan brokers in contravention of state law.  The Knox complaint also contains a "limitation of claims" section, which specifies that Knox does not assert any claims under federal law, or against CSB or any other bank.

B.

On March 2, 2005, counsel for the loan servicers sent Knox a request to submit to arbitration of the Knox claims.  Knox did not respond to the demand letter.  Meanwhile, the loan servicers attempted to remove the Knox action to federal court in the

4

Eastern District of North Carolina, asserting as the basis for federal jurisdiction that Knox's state-law usury claims were completely preempted by the National Bank Act (the "NBA"), 12 U.S.C. §§ 85, 86, and Section 27 of the Federal Deposit Insurance Act (the "FDIA"), 12 U.S.C. § 1831d.[2]  See Knox v. First Southern Cash Advance, No. 05-CV-43 (E.D.N.C. 2005), J.A. 265-68.

The district court remanded the case to state court, holding that the FDIA does not apply to Knox's claims against the non-bank loan servicers, even if CSB actually issued the loans.  Id.  In that remand order, the eastern district reviewed the well-pleaded complaint rule, which controls the determination of whether federal question jurisdiction exists. That rule provides that an action is not removable under 28 U.S.C. § 1441(b) unless a federal question is apparent from the face of the complaint.  See id. at 266 (citing Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987)).  However, complete preemption is an exception to the well-pleaded complaint rule. "If Congress has expressed a clear intention to permit removal of all state law claims arising within an area of law, courts will construe those state claims to arise under federal law."

---

[2] Because Petitioners do not assert the NBA as a basis for jurisdiction in this case, we omit further discussion of it.

5

J.A. 266. As the court also noted, complete preemption is an "extraordinary result" that the Supreme Court has applied only three times. Id.

Turning to the loan servicers' arguments, the court determined that state-law usury claims are not completely preempted by the FDIA merely because a state-chartered bank was the named lender in the loans at issue, where the claims were not brought against that bank. Consequently, the eastern district found no federal question presented on the face of the Knox complaint, and remanded the action to state court for lack of subject-matter jurisdiction.

C.

The loan servicers, joined now by CSB, subsequently filed this Petition under § 4 of the FAA in the Middle District of North Carolina, asking that court to order arbitration of Knox's claims. See Community State Bank v. Knox, 850 F. Supp. 2d 586, 603 (M.D.N.C. 2012). Knox moved to dismiss the Petition.

Section 4 of the FAA authorizes a federal district court to entertain a petition to compel arbitration brought by a party "aggrieved" by another's resistance to arbitration, if the court would have jurisdiction, "save for [the arbitration] agreement," over "the subject matter of a suit arising out of the controversy between the parties." 9 U.S.C. § 4. As the district court below noted, although § 4 allows an aggrieved

6

party to file such a petition in any district court which would have subject-matter jurisdiction over the underlying controversy, it does not itself bestow federal jurisdiction; rather, it requires that an independent jurisdictional basis over the parties' dispute exist for access to the federal forum. See Vaden v. Discover Bank, 556 U.S. 49, 59 (2009). As relevant here, to determine whether an adequate independent jurisdictional basis exists, the court "may look through a § 4 petition [to the underlying substantive controversy] to determine whether it is predicated on an action that arises under federal law." Id. at 62 (internal quotation marks omitted).

The court looked through the Petition to the stated underlying controversy between the parties--the Knox complaint. Although Knox asserted only state-law claims against non-diverse loan servicers, Petitioners argued that the Knox action nonetheless supplies a basis for federal jurisdiction because its claims are completely preempted by the FDIA. Thus, the district court below was faced with essentially the same argument already rejected by the eastern district in remanding the Knox case to state court.

Addressing Petitioners' preemption argument, the district court below examined our opinion in Discover Bank v. Vaden, 489 F.3d 594 (4th Cir. 2007) ("Vaden I") (holding that the FDIA

completely preempts state usury laws that hold state-chartered banks to a different maximum permissible interest rate), noting that the Supreme Court reversed and remanded that decision on other grounds in Vaden v. Discover Bank, 556 U.S. 49 (2009) ("Vaden II"). The district court expressed doubt as to whether the Supreme Court's decision left intact Vaden I's holding with respect to FDIA preemption, but reasoned that, even if the FDIA completely preempts state-law usury claims asserted against state-chartered banks, the Knox claims do not qualify as such.

The district court discussed the loan servicers and CSB separately. As to the former, the court explained that the loan servicers, as non-bank entities, have no basis for seeking protection under the FDIA, which applies only to banks. Nor did the court accept CSB, a state-chartered bank to which the FDIA does apply, as the "real party in interest" in the Knox action, reasoning that the Knox complaint asserts state-law claims against the loan servicers "separate from any potential unasserted claims against [CSB]," 850 F. Supp. 2d at 601, and that, "[a]s a result, the state-law claims in the Knox case are simply state law claims against non-bank entities," id. at 601. The court further reasoned that the remand order from the eastern district is entitled to preclusive effect on this issue.

Finally, the district court turned to CSB's arguments that it may bring a petition to compel Knox to arbitrate any claims

8

that Knox might assert against CSB, which would present a federal question. Having already rejected the premise that the Knox action should be viewed as properly brought against CSB, the court further concluded that no underlying controversy exists between Knox and CSB. Specifically, the court considered the facts that: (1) the Knox complaint disclaims any allegations against CSB; (2) CSB has ceased its "payday loan" activities in North Carolina, and the statute of limitations has run on any potential claims that could have been asserted against CSB raising any of the theories being litigated in the Knox action; and (3) under the agreement between the loan servicers and CSB, the servicers are obligated to indemnify CSB for any potential liability, meaning that CSB has no monetary stake in the outcome of the Knox action.

Finding that there is no controversy between Knox and CSB subject to arbitration, the district court concluded that CSB is not a "party aggrieved" under § 4 of the FAA. "According to the plain text of the FAA, Petitioners must allege that Respondents refused to arbitrate, as well as that an underlying controversy exists between the parties apart from the refusal to arbitrate." 850 F. Supp. 2d at 602 (citing Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1110 n.19 (11th Cir. 2004) ("[I]f a party makes a motion to compel arbitration under 9 U.S.C. § 4, a district court must determine if there exists a case or controversy in

9

order for it to exercise its jurisdiction over that motion to compel.")).

The district court accordingly dismissed the Petition. Petitioners timely appealed.

## II.

The primary issue in this appeal is whether the district court correctly concluded that no federal question provides a basis for jurisdiction over the Petition. We review de novo the district court's determination of its own subject-matter jurisdiction. See Taylor v. Kellogg Brown & Root Servs., Inc., 658 F.3d 402, 408 (4th Cir. 2011); Lontz v. Tharp, 413 F.3d 435, 439 (4th Cir. 2005).

## A.

Turning first to the loan servicers' arguments, we find that the Knox claims against the non-bank loan servicers fall squarely outside the scope of the FDIA. Put briefly, the FDIA allows a state-chartered bank to charge interest rates permitted in its home state on loans made outside of that state, even if that interest rate would be illegal in the state where the loan is made. 12 U.S.C. § 1831d; see also West Virginia v. CashCall, Inc., 605 F. Supp. 2d 781, 784-85 (S.D.W. Va. 2009). Although we decline to apply collateral estoppel to bar relitigation of this issue, we nevertheless conclude, as did the eastern

10

district and the district court below, that the Knox claims are substantively aimed at the loan servicers to the exclusion of CSB. Thus, the claims have no connection to an out-of-state state-chartered bank, and the FDIA cannot apply.

Petitioners rely heavily on our opinion in Vaden I, 489 F.3d at 601, in which a loan servicer sued to collect outstanding credit card debt, and the debtor in turn filed counterclaims and defenses which asserted violations of state usury law against the servicer. On these facts, we found that the debtor's state-law usury claims were properly asserted against the bank, not the servicer, because the bank was the "real party in interest." Id. Even if this analysis remains intact after the Supreme Court's reversal, see Vaden II, 556 U.S. 49, we would not reach the same result in the present case.

The Knox claims do not merely challenge certain terms of the loans, but instead specifically target several practices of the loan servicers. Unlike the borrower in Vaden I, Knox disputes that CSB had authority over the loan terms and was the "real lender." Even so, pleading in the alternative, the Knox complaint makes clear that, if CSB was in fact the actual lender in the loans at issue, Knox still asserts claims against the

11

loan servicers only.[3]  For this reason, and because unpaid debts are not at issue, determination of which party controlled the loan terms is far less integral here than in Vaden I. Furthermore, the indemnification arrangement in this case is reversed from that in Vaden I--the loan servicers have agreed to indemnify CSB against potential claims, not vice versa.  We consequently decline Petitioners' invitation to treat the Knox claims as properly brought against CSB so as to bring those claims within the scope of the FDIA.

Accordingly, no federal subject-matter jurisdiction exists over the Knox claims, and no independent jurisdictional basis supports the loan servicers' Petition.

B.

Likewise, we find that the district court correctly dismissed the Petition as brought by CSB.  Because there is no existing or potential substantive conflict between Knox and CSB that Knox has refused to arbitrate, CSB has failed to satisfy the requirements of § 4 of the FAA.

As the district court explained, Knox has not filed any claims against CSB, in the Knox case or in any other forum.  The

---

[3] Specifically, Knox asserts unfair and deceptive trade practices, illegal efforts to evade state law, and activities as loan brokers in contravention of state law.  We note that most of these claims could not plausibly be asserted against CSB.

12

Knox complaint specifically disclaims any future action by Knox against CSB, and the district court found that Knox would now be time-barred from filing any claims related to the Knox allegations against CSB.[4] Nevertheless, CSB argues that an underlying dispute with Knox exists. In CSB's view, the Petition does not confine the underlying dispute to claims asserted in the Knox action, but rather asks the court to find federal question jurisdiction based on other potential claims. We reject these arguments for the reasons that follow.

First, we reiterate that CSB has no stake in the Knox action. Consequently, we cannot find an independent jurisdictional basis for CSB's Petition in the Knox claims. Second, we fail to see any other underlying dispute between CSB and Knox upon which CSB may base its request for arbitration, and reject CSB's invitation to invent one or allow a purely hypothetical future claim to support the Petition.

The underlying controversy between the parties in this case is concretely defined by the Knox claims. The Petition itself makes this clear enough, asking the district court to order arbitration of "the disputes raised in" the Knox action and stay

_____

[4] To support this point, Knox has filed a motion for judicial notice, which proffers CSB's "Motion for Voluntary Dismissal" filed in a separate action proceeding in a different federal venue. We deny the motion for judicial notice as unwarranted and unnecessary to our determination.

13

those state proceedings. J.A. 25. Although the Petition also attempts to frame the underlying dispute as one "centering around the question of whether the loans made to [Knox] are governed by [the FDIA], as opposed to state law," J.A. 12, this inaccurate characterization is just the sort of artful dodge proscribed by Vaden II. See 556 U.S. at 67 ("Artful dodges by a § 4 petitioner . . . divert us from recognizing the actual dimensions of that controversy."). Petitioners do not seek arbitration of the question of FDIA preemption; to the contrary, they are currently seeking adjudication of that issue by federal courts. Even if they desired arbitration on that point, a preliminary jurisdictional issue such as this one could not be passed on to an arbitrator in any event.

Accordingly, we decline to be diverted by the Petition's clever framing, recognizing instead that the Knox action comprises the actual controversy between the parties. Cf. Vaden II, 556 U.S. at 67-68 ("The text of § 4 instructs federal courts to determine whether they would have jurisdiction over 'a suit arising out of the controversy between the parties'; it does not give § 4 petitioners license to recharacterize an existing controversy, or manufacture a new controversy, in an effort to obtain a federal court's aid in compelling jurisdiction.").

Notably, the Eleventh Circuit recently reached the opposite result, in Community State Bank v. Strong, 651 F.3d 1241 (11th

14

Cir. 2011). In that case, Strong, a payday lendee, brought a putative class action against Georgia loan servicers, alleging violations of state usury and licensing laws, as well as the "Georgia RICO" statute, and renouncing any claims under federal law or against any state-chartered bank. Id. at 1249-50. After the loan servicer defendants, together with a non-named state-chartered bank (also CSB), notified Strong of an intent to arbitrate and received a rejection in reply, the loan servicers and CSB filed a petition to compel arbitration under § 4 in federal court. Id. at 1250.

The Eleventh Circuit affirmed the district court's dismissal of the loan servicers' petition for reasons not pertinent to this appeal, but determined that jurisdiction was proper as to CSB because "no preexisting litigation has yet defined the contours of the controversy between Strong and the Bank. The Bank's FAA petition is, in other words, what we will call 'freestanding'--that is, it does not arise out of pending litigation between the parties." Id. at 1245. Thus apparently freed from the Supreme Court's focus on existing litigation to define the actual controversy between the parties in Vaden II, Strong surveyed any number of plausible claims that could be filed against CSB, and ultimately found federal jurisdiction proper based on a hypothetical Federal Racketeer Influenced and

15

Corrupt Organizations ("RICO") claim, 18 U.S.C. §§ 1961-1962. Id. at 1259-60.

We cannot reach the same result on the facts presented here. Although it is true that no preexisting litigation defines the controversy between Knox and CSB, this is so because there is no controversy between Knox and CSB. Although the Petition posits that Knox could allege RICO claims against CSB, this is pure speculation. Not only has Knox specified, both in the state court complaint and in sworn affidavits in the present action, that the Knox plaintiffs will not bring any claims against CSB, but CSB has also never asked Knox to arbitrate a RICO claim. In fact, unlike in Strong, here CSB had not asked Knox to arbitrate any claims at all prior to filing the Petition.[5]

To the extent the Petition describes the real controversy that Petitioners seek to have arbitrated, that controversy is

---

[5] At oral argument, Petitioners conceded that the March 2, 2005 letter from the loan servicers to Knox constitutes the only demand for arbitration contained in the record, and that CSB was not a party to any pre-Petition attempt to request arbitration. This fact alone might be fatal to CSB's ability to petition under § 4 of the FAA. See 9 U.S.C. § 4 (describing a party who may bring a petition thereunder as one "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate"); cf. Strong, 651 F.3d at 1256 ("After all, FAA § 4 is only triggered when one party has expressed a 'refusal' to arbitrate, and the other party has been thereby 'aggrieved.'" (quoting 9 U.S.C. § 4)).

16

embodied in the Knox claims. Those claims were not brought against CSB, are distinct from any claims that could be made against CSB, and do not implicate any interest on CSB's part that could be compelled to arbitration by a federal court. We decline to reach beyond the existing litigation in search of a basis for federal jurisdiction over the Petition. Accordingly, we conclude that the district court properly focused on the actual underlying controversy between the parties in dismissing the Petition.

### III.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

17