**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-1837

ZAYO GROUP, LLC,

Plaintiff – Appellant,

v.

NORFOLK SOUTHERN RAILWAY COMPANY,

Defendant – Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Liam O'Grady, District Judge. (1:21-cv-01300-LO-JFA)

Argued: October 25, 2023                    Decided: November 28, 2023

Before HARRIS and QUATTLEBAUM, Circuit Judges, and Kenneth D. BELL, United States District Judge for the Western District of North Carolina, sitting by designation.

Reversed in part, vacated in part and remanded with instructions to remand by unpublished opinion. Judge Bell wrote the opinion, in which Judge Harris and Judge Quattlebaum joined.

**ARGUED:** William H. Hurd, ECKERT SEAMANS CHERIN & MELLOTT, LLC, Richmond, Virginia, for Appellant. Tobias S. Loss-Eaton, SIDLEY AUSTIN LLP, Washington, D.C., for Appellee. **ON BRIEF:** Annemarie DiNardo Cleary, Richmond, Virginia, Charles A. Zbedski, ECKERT SEAMANS CHERIN & MELLOTT, LLC, Washington, D.C., for Appellant. Gordon D. Todd, Cody L. Reaves, Stephen S.

Laudone, SIDLEY AUSTIN LLP, Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit.

BELL, District Judge:

In 1999, Norfolk Southern signed a twenty-year lease for a two inch wide "duct" to run fiberoptics telecommunications cables alongside twenty-five miles of its railroad in Northern Virginia with Metromedia Fiber Network Services, Inc., a company which Zayo Group, LLC acquired in 2012. When Zayo disagreed with the amount of rent that it would have to pay to renew the lease for ten more years in 2019 (a dispute which is the subject of a separate appeal to this Court),[1] it sought to exercise eminent domain over the "duct lease" property. Under Virginia law, Zayo's path towards that goal was required to begin in the Virginia State Corporation Commission ("VSCC"), an agency from which Zayo needed to obtain permission to pursue a condemnation action in a Virginia circuit court. However, when Zayo filed a petition seeking that authority from the VSCC, Norfolk Southern removed the proceeding to the United States District Court for the Eastern District of Virginia pursuant to 28 U.S.C. § 1441(a), alleging that federal law completely preempted Zayo's efforts to "seize" the railroad's property. Zayo then moved to remand the matter, a motion which the District Court denied in an order from which Zayo now appeals.

As argued by the parties, the jurisdictional dispute before the Court raises several broad and important issues, including how to define what is a "State court" from which actions can be removed under 28 U.S.C. § 1441(a) and the scope of the Interstate Commerce Commission Termination Act's ("ICCTA") "complete preemption" with

---

[1] Norfolk Southern Railway Company v. Zayo Group, LLC, No. 22-1554.

3

respect to the "non-exclusive easement" condemnation being sought by Zayo. However, we need not wade into those thickets[2] because the nature of the issue presented to the VSCC affords a much narrower ground on which to resolve this appeal. Accordingly, our focus here – after a brief summary of the fuller background – will be on the threshold issue of whether the District Court had original jurisdiction over the VSCC's proceedings sufficient to support removal. Because we find that the District Court did not have original jurisdiction over the limited issue before the VSCC – that is, the agency's

---

[2] The removal statute at issue only permits defendants to remove civil actions that have been filed in a "State court." 28 U.S.C. § 1441(a). The question of whether and under what circumstances removal under § 1441(a) can extend to proceedings before administrative agencies has split our sister circuits, and we have yet to adopt a framework for this analysis. The First and Seventh Circuits have adopted a "functional approach" that defines a "State court" based on whether the tribunal performs judicial functions. *See Floeter v. C.W. Transp.*, 597 F.2d 1100, 1102 (7th Cir. 1979); *Volkswagen de Puerto Rico, Inc. v. P.R. Lab. Relations Bd.*, 454 F.2d 38, 44 (1st Cir. 1972). More recent cases from the Ninth and Tenth Circuits apply a textual approach, under which defendants may only remove claims from traditional courts. *See Porter Trust v. Rural Water Sewer & Solid Waste Mgmt. Dist. No. 1*, 607 F.3d 1251, 1254–55 (10th Cir. 2010); *Oregon Bureau of Lab. & Indus. ex rel. Richardson v. U.S. West Commc'n, Inc.*, 288 F.3d 414, 418 (9th Cir. 2002). *See also Sun Buick Inc. v. Saab Cars USA, Inc.,* 26 F.3d 1259, 1261-64 (3d Cir. 1994) (criticizing the functional test but ultimately holding that "[u]nder any test" the agency in question "would not qualify as a court"). These cases focus on the plain language of § 1441(a), "which permits removal only from a 'state court,'" and "'implies that the entity must be a *court*" rather than "an administrative agency . . . that . . . conducts court-like adjudications.'" *Porter Trust*, 607 F.3d at 1254–55 (quoting *Oregon Bureau of Labor*, 288 F.3d at 418). Further, beyond this circuit split, we would not write on a blank slate. In *Kolibash v. Committee on Legal Ethics of West Virginia Bar*, we held that a state's legal ethics committee was "a State court" for purposes of § 1442(a), which permits the removal of any "civil proceeding" against a federal officer "in a State court," because the committee "operate[d] in an adjudicatory manner." 872 F.2d 571, 576 (4th Cir. 1989). Thus, if we reached this issue, which we do not, we would have to explain any different analysis of § 1441 and § 1442.

decision on whether Zayo is entitled to later seek condemnation is not completely preempted – we reverse the judgment below and return the case to the District Court with instructions to remand the action to the VSCC.

I.

A.

In November 1999, Zayo's predecessor Metromedia and Norfolk Southern signed a twenty-year lease for an underground cable duct running parallel to a 24.7-mile railroad track stretching between Alexandria and Manassas, Virginia. J.A. 32-33, 187. Pursuant to this lease, Zayo has the "exclusive right" to use this duct for its cables and the "non-exclusive right" to use and occupy the railroad rights-of-way to install related equipment. J.A. 32. However, the lease required Zayo to install, maintain, and operate its equipment in a manner that did not interfere "whatsoever" with the railroad and Norfolk Southern reserved its rights to conduct inspections, to order Zayo to relocate the duct, and to damage or disconnect the duct during any railroad construction or repairs. J.A. 32, 36. The contract also gave Zayo the right to renew the lease for up to two ten-year terms, with rent set at a market rate, as determined by a panel of up to three appraisers if the parties could not reach agreement on the amount. J.A. 33. In 2019, Zayo timely gave notice of its intent to renew the lease, and in February 2021 three appraisers, by a two-to-one vote, set a new annual rental rate of $2,340,000 per year. J.A. 95, 178.

At that point, the parties' legal journey began. Zayo disputed the amount of the renewal rent payments (based on its contention that the appraisal process required an unanimous vote of the appraisers) and refused to pay the increased rent. In response, on

5

May 26, 2021, Norfolk Southern sued Zayo for breach of contract and sought a declaratory judgment regarding the rent in the United States District Court for the Eastern District of Virginia. *See Norfolk S. Ry. Co. v. Zayo Group, LLC*, Case 1:21-cv-01299-LO-JFA, United States District Court (E.D. Va.).

B.

The day after the breach of contract action was filed, Zayo opened a second front in the parties' quarrel, seeking to exercise eminent domain over the duct. J.A. 21. Both Zayo and Norfolk Southern are delegated eminent domain powers by the Virginia General Assembly. However, under Virginia law, Zayo was required to obtain the VSCC's consent prior to seeking condemnation in a Virginia circuit court. *See* Va. Code § 25.1-102. And so, on May 27, 2021, Zayo petitioned the VSCC[3] for "an order certifying that a public necessity or an essential public convenience requires that Zayo may take by condemnation proceedings property belonging to Norfolk Southern," and seeking "permission pursuant to Virginia Code § 25.1-102 for Zayo to file a petition to take property belonging to Norfolk Southern by condemnation proceedings." J.A. 22-23, 26. However, the VSCC never ruled on Zayo's petition because on June 4, 2021, Norfolk

---

[3] The VSCC was established by the Virginia constitution to charter corporations, administer regulations governing corporations, and regulate rates of public utilities. Va. Const. art. IX. The Virginia legislature has assigned additional duties to the Commission by statute, including the issuance of certificates of public necessity. Preston C. Shannon, *The Evolution of Virginia's State Corporation Commission*, 14 Wm. & Mary L. Rev. 523, 534 & n.57 (1973).

6

Southern timely removed Zayo's petition to federal court pursuant to 28 U.S.C. § 1441(a), arguing that removal was proper because the condemnation of the duct was completely preempted by the ICCTA. J.A. 9-15. Ultimately, Norfolk Southern's contract action and Zayo's removed VSCC petition were transferred within the district so they could be heard by a single judge. J.A. 114-15.

C.

With respect to the VSCC petition, Zayo timely sought remand to the Commission. J.A. 100. Following oral argument, the District Court issued an order denying remand, holding that the Commission qualified as a "State court" as required for removal under 28 U.S.C. § 1441(a) and that Zayo's petition was completely preempted by the ICCTA. J.A. 162-70. Soon thereafter, Norfolk Southern moved for judgment on the pleadings, arguing that Zayo could not allege any violation of the Act. J.A. 172. Zayo then moved to amend its Complaint, which the court granted. J.A. 175-76; J.A. 182-83.

In its Amended Complaint, Zayo argued that because the court had supplemental jurisdiction over the Amended Complaint, "powers vested in the Commission by Virginia law . . . may be exercised instead by this Court." J.A. 186. It therefore asked the court to "certify that a public necessity or that an essential public convenience" required Zayo to exercise eminent domain over the duct "for the limited purpose of acquiring a non-exclusive easement consistent with the terms of the Parties' Lease and as described herein." J.A. 188. Zayo described its requested "non-exclusive easement" as giving it the right to use Norfolk Southern's property to construct, install, operate, and maintain its

7

"fiber optic cable, innerducts, manholes, huts and related equipment." J.A. 188-89. The amended complaint stated that these rights "including Zayo's rights to the Duct, shall be non-exclusive" and that Zayo's "use of its easement . . . shall be carried out in such manner as not to 'unduly interfere with property that is, or may later be, needed for railroad purposes.'" J.A. 190 (quoting *Jie Ao & Xin Zhou – Pet. for Declaratory Ord.*, No. FD 35539, 2012 WL 2047726, at *21 (S.T.B. June 4, 2012)). The requested easement also provided that Zayo's property rights "shall be consistent with the terms of the Lease to the fullest possible legal and practical extent, including but not limited to affording Norfolk Southern all rights and protections provided under the Lease." J.A. 190.

Norfolk Southern moved to dismiss the Amended Complaint on largely the same grounds for which it sought removal: that the claim was still completely preempted by federal law and failed to state a claim under the ICCTA. The District Court granted the motion to dismiss, concluding that Zayo still sought an exclusive easement that was completely preempted by the ICCTA and that the Act's remedies "do not provide for condemnation." J.A. 220-228.

Zayo then appealed to this court the denial of its motion for remand, the granting of the motion to dismiss, and the order awarding judgment to Norfolk Southern. J.A. 233.

II.

We review questions of subject matter jurisdiction de novo, including a district court's denial of a motion to remand. *Elliott v. Am. States Ins. Co.*, 883 F.3d 384, 390 (4th Cir. 2018) (citing *Mayes v. Rapoport*, 198 F.3d 457, 460 (4th Cir. 1999)). Doubts

8

about the propriety of removal should be resolved in favor of remanding the case to state court and in doing so, removal statutes must be strictly construed. *Id.*; *Barbour v. Int'l Union*, 640 F.3d 599, 605 (4th Cir. 2011) (en banc). Further, this court "review[s] de novo the question of whether Plaintiffs' state law claims are completely preempted." *Lontz v. Tharp*, 413 F.3d 435, 439 (4th Cir. 2005) (quoting *Felix v. Lucent Techs., Inc.*, 387 F.3d 1146, 1153 (10th Cir. 2004)).

The general federal removal provision, 28 U.S.C. § 1441(a), permits defendants to remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." *See Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 170 (4th Cir. 2014). A state action is only subject to removal "if it could have been brought originally in federal district court." *See King v. Marriott Int'l, Inc.*, 337 F.3d 421, 424 (4th Cir. 2003). Thus, a defendant must establish diversity or federal question jurisdiction to remove a claim. *Lontz v. Tharp*, 413 F.3d 435, 439 (4th Cir. 2005). In limited circumstances, defendants may invoke federal question jurisdiction by arguing that a state-law cause of action is "completely preempted" by federal law. *Lontz*, 413 F.3d at 440. Norfolk Southern removed this case on the sole basis that Zayo's petition for VSCC authorization is completely preempted by the ICCTA. J.A. 11.

Complete preemption occurs when "Congress has occupied the field so thoroughly as to leave no room for state-law causes of action at all." *Johnson v. American Towers, LLC*, 781 F.3d 693, 702 (4th Cir. 2015). The effect of complete preemption is to convert the preempted state-law claim into a cause of action under the preempting statute. *Id.*

9

(quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 399 (1987)).  To invoke complete preemption, the defendant must show: (1) a clear congressional intent to "entirely displace" state law; and (2) an exclusive federal cause of action in a field of "overwhelming national interest." *Lontz*, 413 F.3d at 441.

Here, Norfolk Southern argues that the ICCTA completely preempts Zayo's request for permission to file a condemnation case.  This statute grants the Surface and Transportation Board ("STB") exclusive jurisdiction over several matters related to the regulation of rail transportation, including:

> (1) transportation by rail carriers, and the remedies provided in this part, with respect to rates, classifications, rules . . . , practices, routes, services, and facilities of such carriers; and (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State[.]

49 U.S.C. § 10501(b).  It also mandates that "the remedies provided under this part with respect to the regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law." *Id.*

We have held that ICCTA's "exclusive" jurisdiction, and express preemption clause, occupy the field of railroad regulation and completely preempt conflicting state-law claims.  *See Skidmore v. Norfolk Southern Rwy. Co.*, 1 F.4th 206, 213 (4th Cir. 2021); *see also Edwards v. CSX Transp., Inc.*, 983 F.3d 112, 121 (4th Cir. 2020); *PCS Phosphate Co. v. Norfolk S. Corp.*, 559 F.3d 212, 218 (4th Cir. 2009).  Although this preemption is "complete," its scope varies with the nature of the state claim and the extent of its interference with rail services. Claims that "manage rail transportation" are

10

categorically preempted. *Skidmore*, 1 F.4th at 213. Those that do not are only preempted if they "unreasonably interfere" with railroad services, requiring a "fact-intensive inquiry" into "the effect of providing the claimed remedy." *Edwards*, 983 F.3d at 121 & n.12 (labelling this an "as-applied" analysis). Claims with a mere incidental effect on railroad transportation are not preempted at all. *PCS Phosphate*, 559 F.3d at 218.[4]

### III.

So, to determine whether the District Court had original jurisdiction over Zayo's VSCC proceedings, the question becomes whether Zayo's petition is "completely preempted" by the ICCTA; that is, does it "constitute efforts to govern or manage rail transportation." *See Skidmore*, 1 F.4th at 213–15. Under Virginia law, public service corporations and railroads have the power to exercise eminent domain over land "deemed necessary . . . for its use in serving the public . . . whenever [they] cannot agree on the terms of purchase or settlement" with the landowner. Va. Code. § 56-49 (public service

---

[4] Most applicable here, we held in *Skidmore* that "attempts to adversely possess a railroad's property constitute efforts to govern or manage rail transportation," 1 F.4th at 213–15, but noted that nonexclusive easements may be subject to a lesser standard. *Id.* at 215 ("[E]asements that don't 'take railroad property outright' don't necessarily 'affect the rail network in the same way as carving out property that is part of a railroad.'"). Relatedly, the STB has opined that "non-exclusive easements for at-grade road crossings, wire crossings, sewer crossings," and similar utility easements are preempted by ICCTA only if they "impede rail operations or pose undue safety risks." *Maumee & W. R.R. & RMW Ventures, LLC* - Pet. For Declaratory Ord., 2004 WL 395835, at *2 (S.T.B. Mar. 2, 2004); *see also Jie Ao and Xin Zhou – Pet for Declaratory Ord.*, 2012 WL 2047726, at *6 (S.T.B. Jun. 4, 2012). As with the issue of whether the VSCC is a "State court," we express no opinion as to whether Zayo's proposed "nonexclusive easement" is "completely preempted" under the ICCTA or how it should be analyzed under *Skidmore*, *Edwards*, etc.

corporations); Va. Code § 56-347 (railroads). Proceedings to exercise this power "shall be conducted in the manner provided by Chapter 2 (§ 25.1-200 et seq.) of Title 25.1 and shall be subject to the provisions of § 25.1-102." *Id.* State circuit courts have jurisdiction over condemnation proceedings, § 25.1-201, which "shall be initiated by filing a petition . . . in the court," § 25.1-205. If applicable, this petition must contain information regarding "compliance with the provisions of § 25.1-102." § 25.1-206(2)(i). Section 25.1-102 forbids corporations from filing a petition to exercise eminent domain over "property belonging to any other corporation possessing the power of eminent domain, unless, after notice to all parties in interest and an opportunity for a hearing, the State Corporation Commission shall certify that a public necessity or that an essential public convenience shall so require, and shall give its permission thereto." § 25.1-102.

The conclusion that we must take from this statutory scheme is that in ruling on a petition seeking the authority to pursue condemnation in circuit court, the VSCC does not take action that "manages rail transportation" or even immediately impacts the railroad. In other words, the proceedings in the VSCC may well be the foundation for future action, but they are not themselves sufficient to affect the railroad and thereby implicate the ICCTA. Most simply put, what would happen to Norfolk Southern's property or business if Zayo obtained a certificate of public necessity and authority to seek condemnation but did not pursue a condemnation? Nothing. It is only in the condemnation proceeding itself that the railroad's property may be affected and thus potentially preempted by the ICCTA.

12

Moreover, removal of the VSCC proceedings prior to a condemnation action is premature because until the VSCC has decided what property right Zayo may claim and Zayo has actually sought condemnation of specific "property" or an "easement," the scope of the ICCTA's preemption cannot be fully measured and any interference with the railroad is speculative.[5]   Indeed, the parties sharply disagree on the nature of Zayo's ultimate intended condemnation, with Norfolk Southern urging the court to see it as a permanent "seizure" of their property and impingement on their operations (notwithstanding the twenty-year history of the parties' co-existing uses under the parties' lease) and Zayo's most recent contentions that it only seeks a nonexclusive "utility" easement (notwithstanding its much broader VSCC petition). In sum, until the condemnation action is filed, there is no effect on the railroad nor can the scope of the ICCTA preemption necessary to support jurisdiction in federal court be fully known. Therefore, there is no complete preemption at this stage of the state proceedings and thus the district court lacks original jurisdiction over Zayo's VSCC proceedings.

It is axiomatic that District Courts of the United States are courts of limited jurisdiction and possess only the "power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005) (citation omitted); *see Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 432 (4th Cir. 2014). Indeed, a federal court must presume that a case lies outside its

---

[5] Beyond including the detailed scope of the requested condemnation, the removal of a condemnation action from a Virginia circuit court will also necessarily avoid the issue of whether the removed proceeding was pending in a "State court."

13

limited jurisdiction unless and until jurisdiction has been shown to be proper. *United States v. Poole*, 531 F.3d 263, 274 (4th Cir. 2008) (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994)). Further, the burden of demonstrating jurisdiction and the propriety of removal, which raises significant federalism concerns, rests with the removing party. *See Burrell v. Bayer Corp.*, 918 F.3d 372, 380–81 (4th Cir. 2019) ("[T]he party seeking removal … bears the burden of establishing federal jurisdiction, in a context in which we 'strictly construe' jurisdictional limits because of the 'significant federalism concerns' that attend the removal of cases from state court to federal court."); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010). For the reasons discussed above, Norfolk Southern has failed to meet that burden because the limited and preliminary scope of the VSCC proceedings cannot support original jurisdiction in federal court. Accordingly, we reverse the District Court's denial of the motion to remand, vacate the other orders from which Zayo appeals and return this matter to the District Court with instructions to remand the case back to the VSCC for further proceedings.

*REVERSED IN PART, VACATED IN PART*
*AND REMANDED WITH INSTRUCTIONS*