In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2127
Steven Bastien,

Plaintiff-Appellant,

v.

AT&T Wireless Services, Inc.,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 0049--Charles P. Kocoras, Judge.

Argued November 9, 1999--Decided March 6, 2000

Before Bauer, Easterbrook and Kanne,
Circuit Judges.

Kanne, Circuit Judge.  Steven Bastien
sued AT&T Wireless Services, Inc. in an
Illinois court over his allegations that
the company misled him about his cellular
telephone service. Congress has decreed
that suits related to rates and service
of telephone companies be handled in
federal court, and despite Bastien's best
efforts at crafting a state-law
complaint, AT&T Wireless exercised its
right to have Bastien's case removed to
federal court. Bastien challenged the
removal order and the jurisdiction of the
federal district court to hear what he
contended were state law matters. Because
we read Bastien's complaint to challenge
only AT&T Wireless's rates and right to
enter the market on the terms specified
by the FCC, we affirm the district
court's ruling and hold that jurisdiction
over Bastien's complaint belongs
exclusively to the federal courts.

I.  History
   Until recently, the Chicago wireless
telephone market consisted of Ameritech
and Southwestern Bell (Cellular One).
AT&T Wireless, a subsidiary of AT&T,
entered the market in the late 1990s,
after receiving approval of its rates and

infrastructure arrangements from the Federal Communications Commission, as required by federal law. See 47 C.F.R. sec. 24.1 et seq. To encourage new market entrants, the FCC allows service providers to begin operations in an area before it has fully built out its network. For this reason, the service provided by AT&T Wireless in 1998 was far from flawless.

In 1998, Bastien signed up as an AT&T Wireless customer, although his complaint, filed in state court in Cook County, provided no information regarding the terms and conditions of his service agreement with AT&T Wireless. He quickly became dissatisfied with the quality of service. Because of the insufficient coverage provided by AT&T Wireless's network and also because of the inherent difficulties and unreliability of wireless service generally, many of Bastien's calls were "dropped," that is, cut off in mid-call. Dropped calls occur because of interference to the radio wave carrying the call, such as from tunnels, buildings and the rare Midwestern hill. A more fully developed infrastructure would lose fewer calls because there would be less chance of interference.

Upset about the number of dropped calls, Bastien complained to AT&T Wireless and was told that he could get refunds either automatically by redialing the dropped call within sixty seconds, or by later calling a customer representative and having a credit applied to his bill. Bastien took full advantage of both options, although he often was unable to get the automatic rebate by redialing since a source of interference that interrupts a call may prevent re-connection for longer than sixty seconds. Unhappy that the automatic credit option did not always work, Bastien complained to the FCC, but was told that AT&T Wireless was in full compliance with all FCC rules.

Bastien then filed suit in Illinois state court, alleging that AT&T Wireless breached its contract with him and committed consumer fraud. In the complaint, Bastien alleged that:

9. AT&T Wireless signed up subscribers without first building the cellular towers and other infrastructure necessary

to provide reliable cellular connections.

10. As a result, a large proportion of attempts to place calls on AT&T Wireless' system are unsuccessful.

11. AT&T Wireless nevertheless continued marketing and selling its telephones and telephone service, without regard to the fact that it knew that it could not deliver what it was promising.

. . .

23. By signing up subscribers without first building the cellular towers and other infrastructure necessary to accommodate good cellular connections to such subscribers, with the result that a large proportion of attempts to place calls on AT&T Wireless' system are unsuccessful, AT&T Wireless violated:

a.  Its contracts; and

b.  The implied duty of good faith and fair dealing under such contracts.

. . .

25. AT&T Wireless violated sec. 2 of the Illinois Consumer Fraud Act, 815 ILCS 505/2 by committing unfair acts or practices as follows:

a.  Signing up subscribers without first building the cellular towers and other infrastructure necessary to accommodate good cellular communications to such subscribers, with the result that a large proportion of attempts to place calls on AT&T Wireless' system are unsuccessful;

b.  Misrepresenting the quality and benefits of its products and services;

c.  Concealing the material facts that it did not have the capacity to handle the volume of its cellular calls; and

d.  Failing to have appropriate means for crediting customers for incomplete calls.

26. AT&T Wireless knew that it was signing up subscribers without first building the cellular towers and other infrastructure necessary to handle the call range reasonably expected to be used by such subscribers, and that a large proportion of attempts to place calls on

AT&T Wireless' system would be unsuccessful.

AT&T Wireless removed the case pursuant to 28 U.S.C. sec. 1441(b) on the ground that Congress had expressly preempted regulation of rates and market entry for mobile telephone service in the amendments to the Federal Communications Act of 1934, 47 U.S.C. sec. 332(c)(3)(A). That section states that "no State or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service or any private mobile service, except that this paragraph shall not prohibit a State from regulating the other terms and conditions of commercial mobile services." Id. With this preemption clause in mind, Bastien diligently attempted to state his claim in terms of Illinois state law actions. However, AT&T Wireless contended that Bastien's complaint in fact challenged AT&T Wireless's rates and right to enter the market, two subjects specifically granted to the primary jurisdiction of the FCC.

Bastien moved under Rule 12(b)(1) to remand the case to Illinois state court for lack of federal subject-matter juris diction, and AT&T Wireless moved for dismissal of the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. Because the federal statute completely preempted the stated actions, Judge Charles P. Kocoras denied Bastien's 12(b)(1) motion and granted AT&T Wireless's motion to dismiss. Bastien appealed the denial of the 12(b)(1) motion to remand the case to state court. On appeal, he did not brief or argue the Rule 12(b)(6) dismissal so that issue is deemed waived. See Sere v. Board of Trustees, 852 F.2d 285, 287 (7th Cir. 1988)./1

II.  Analysis

Bastien contends that his complaint properly set out two claims under Illinois law--breach of contract and consumer fraud--that were distinct from the rates and market entry claims specifically reserved for the FCC. As such, Bastien believes that the federal district court did not have jurisdiction to hear his case, and the doctrine of primary jurisdiction, which ordinarily

would refer the case to the administrative agency, did not apply. If Bastien's complaint in fact raises regulatory issues preempted by Congress, then the claims would fail as a matter of law since they are couched in terms of two state law actions. In that case, Bastien's suit properly would be dismissed.

It is true that a plaintiff is a master of his own complaint and may seek to avoid federal jurisdiction by pleading only state law claims, see Franchise Tax Bd. v. Construction Laborers Vacation Trust for S. Cal., 463 U.S. 1, 10 (1983); Taylor v. Anderson, 234 U.S. 74, 75-76 (1914); Lister v. Stark, 890 F.2d 941, 943 (7th Cir. 1989), but when that complaint, fairly read, states a federal question, the defendant may remove the case to federal court. See 28 U.S.C. sec. 1441(a)-(b); Burda v. M. Ecker Co., 954 F.2d 434, 438 (7th Cir. 1992) (holding that court may look beyond face of the complaint to determine if plaintiff "artfully pleaded" matters under state law that actually raise a federal question). Federal preemption normally would constitute a federal defense to a state law action, and therefore would not support removal from state court. See Gully v. First Nat'l Bank, 299 U.S. 109, 113 (1936). However, in some instances, Congress has so completely preempted a particular area that no room remains for any state regulation and the complaint would be "necessarily federal in character." See Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64 (1987). In that situation, removal is proper despite the well-pleaded complaint rule. See id.

There can be no doubt that Congress intended complete preemption when it said "no State or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service." 47 U.S.C. sec. 332(c)(3) (emphasis added). This clause completely preempted the regulation of rates and market entry, allowing removal to federal court, although the savings clause continues to allow claims that do not touch on the areas of rates or market entry. Therefore, Bastien's attempt to use the "well-pleaded complaint" rule to shield himself from federal court jurisdiction would be unavailing if his

complaint in fact challenges rates or market entry. See Caterpillar, Inc. v. Williams, 482 U.S. 386, 393 (1987); Metropolitan Life, 481 U.S. at 65-66 (holding that a purported state law claim that involves areas preempted by federal law must be recharacterized as a federal claim); Bartholet v. Reishauer A.G. (Zurich), 953 F.2d 1073, 1075 (7th Cir. 1992). We will not be bound by the names and labels placed on a complaint by the plaintiff when that complaint in fact raises a federal question. See Burda, 954 F.2d at 438. The issue is whether Bastien's complaint, however denominated, actually challenges AT&T Wireless's rates or market entry. We review de novo the denial of the 12(b)(1) motion, which challenges the subject matter jurisdiction of the federal district court. See Retired Chicago Police Ass'n v. City of Chicago, 76 F.3d 856, 862 (7th Cir. 1996); see also Selbe v. United States, 130 F.3d 1265, 1266 (7th Cir. 1997).

A.  Preemption and the Savings Clause

This case asks us to resolve an ambiguity between two statutory clauses. First, the preemption clause states that "no State or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service or any private mobile service, except that this paragraph shall not prohibit a State from regulating the other terms and conditions of commercial mobile services." 47 U.S.C. sec. 332(c)(3)(A). Second, Congress passed a "savings clause" to the Federal Communications Act which provided, "Nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." 47 U.S.C. sec. 414.

At first blush, the savings clause appears to encompass most actions, but it is well established that such cannot be true. To read the clause expansively would abrogate the very federal regulation of mobile telephone providers that the act intended to create. See AT&T Co. v. Central Office Telephone, Inc., 524 U.S. 214, 228 (1998) ("[T]he act cannot be held to destroy itself.") (citation omitted); Cahnmann v. Sprint

Corp., 133 F.3d 484, 488 (7th Cir. 1998). Therefore, we have read the savings clause narrowly to avoid swallowing the rule, but not so narrowly as to render it a dead letter. Although most complaints will involve rates or other issues specially reserved to federal control, we have recognized before that some claims do not and may be addressed in state court. See Cahnmann, 133 F.3d at 488 (citing In re Long Distance Telecommunications Litig., 831 F.2d 627, 633-34 (6th Cir. 1987) [hereinafter Long Distance Litigation]).

The two clauses read together create separate spheres of responsibility, one exclusively federal and the other allowing concurrent state and federal regulation. Cases that involve "the entry of or the rates charged by any commercial mobile service or any private mobile service" are the province of federal regulators and courts. 47 U.S.C. sec. 332(c)(3)(A). The states remain free to regulate "other terms and conditions" of mobile telephone service. Id. The district court aptly characterized the phrase "other terms and conditions" as "somewhat enigmatic," and we agree, but the court's review of the legislative history regarding the meaning of this phrase was unnecessary and not particularly authoritative since it reflected only the views of one chamber of Congress. See Board of Trade v. SEC, 187 F.3d 713, 720 (7th Cir. 1999) ("Legislative history is problematic under the best circumstances, and even so reliable a source as the Conference Committee Report may be used only when there is a genuine ambiguity in the statute.").

Furthermore, this case does not demand so nuanced a study of the phrase "other terms and conditions" because the meaning of "entry of or the rates charged by any commercial mobile service" adequately resolves the issue here. In practice, most consumer complaints will involve the rates charged by telephone companies or their quality of service. See Central Office Telephone, 524 U.S. at 223 ("Any claim for excessive rates can be couched as a claim for inadequate services and vice versa."). As the Supreme Court recognized in Central Office Telephone, a complaint that service quality is poor is really an attack on the rates charged for

the service and may be treated as a federal case regardless of whether the issue was framed in terms of state law. Id. In addition to rates and service, federal regulations expressly dictate the terms under which a provider may enter a new market. The act makes the FCC responsible for determining the number, placement and operation of the cellular towers and other infrastructure. See, e.g., 47 C.F.R. sec.sec. 24.103 (geographic and population coverage requirements), 24.132 (narrowband antenna power and height requirements), 24.232 (broadband antenna power and height requirements). Congress has expressed its decision that these areas be reserved exclusively for federal adjudication, a point that Bastien does not contest.

A review of two cases addressing the divide between the state and federal spheres will illustrate the point. First, in Cahnmann, this court held that a putative breach of contract claim filed against long-distance carrier Sprint Corp. belonged in federal court because the effect of the challenge would be to invalidate a tariff approved by the FCC. Cahnmann, 133 F.3d at 489. In the world of telephone regulation, a tariff is a proposal filed by the carrier with the FCC setting out the rates and conditions at which it intends to offer service to the public. Once approved by the FCC, the carrier may not depart from its terms. Sprint, the defendant in Cahnmann, had initially filed a tariff offering customers "Fridays Free" long-distance service. Id. at 486. The tariff was approved, and Sprint marketed the deal to small business customers. For a variety of reasons, Sprint filed a second, amended tariff a few months later, changing the terms of the first tariff. The FCC approved the amended tariff, and shortly afterward, a consumer class action was filed alleging that Sprint breached its contract with customers who signed up under the first tariff. Although the claim intended to sound in state contract law, we held that a direct challenge to the legitimacy of an approved tariff must be litigated through the federal system. See Cahnmann, 133 F.3d at 490-91. We refused to read the savings clause to nullify the provisions of the Communications Act, despite the clause's admittedly expansive wording. See id. at 488; see also Central Office

Telephone, 524 U.S. at 228.

While instructive, Cahnmann addressed a different type of claim than the one at issue here. The plaintiffs in Cahnmann wielded state law weapons in a facial attack on an approved tariff. The plaintiff here, Bastien, does not dispute AT&T Wireless's compliance with the FCC rules or the validity of those rules, but attempts to use state law as a means of attacking wrongs that he believes are not covered by the preemption clause. If that were true, it would fall within the ambit of the savings clause.

A similar situation arose in the Long Distance Litigation, 831 F.2d at 633-34, which we noted in Cahnmann, 133 F.3d at 488. In that Sixth Circuit case, the plaintiffs accused the long-distance companies of state law fraud and deceit for failing to tell customers of their practice of charging for uncompleted calls. Long Distance Litigation, 831 F.2d at 633. The court reasoned that the purpose of the preemption clause to achieve nationwide uniformity in telecommunications regulation was not at issue in a case challenging fraudulent and deceitful statements by the telephone service providers. Id. Because the claims for fraud and deceit would not have affected the federal regulation of the carriers at all, the court held that Congress could not have intended to preempt the claims.

B.  Bastien's Complaint

We do not need to go so far as to divine the intention of Congress to see that Bastien's complaint directly attacks AT&T Wireless's rates and its right to enter the Chicago market and therefore can be distinguished from the Long Distance Litigation. We merely need to look at the face of the complaint and ask what the nature of the claims are and what the effect of granting the relief requested would be. This shows that, in sharp contrast to the Long Distance Litigation, Bastien's complaint would directly alter the federal regulation of tower construction, location and coverage, quality of service and hence rates for service. In Paragraph 9, Bastien alleges that AT&T Wireless "signed up subscribers without first building the cellular towers and other infrastructure necessary

to provide reliable cellular connections." In Paragraph 11, AT&T Wireless "nevertheless continued marketing and selling its telephones and telephone service." In Paragraph 23, AT&T Wireless allegedly "sign[ed] up subscribers without first building the cellular towers and other infrastructure necessary to accommodate good cellular connections." In Paragraph 25(a), AT&T Wireless "sign[ed] up subscribers without first building the cellular towers and other infrastructure necessary to accommodate good cellular connections to such subscribers." In Paragraph 26, AT&T Wireless "knew that it was signing up subscribers without first building the cellular towers and other infrastructure necessary to handle the call range reasonably expected to be used such subscribers."

These claims tread directly on the very areas reserved to the FCC: the modes and conditions under which AT&T Wireless may begin offering service in the Chicago market. The statute makes the FCC responsible for determining the number, placement and operation of the cellular towers and other infrastructure, as well as the rates and conditions that can be offered for the new service. Should the state court vindicate Bastien's claim, the relief granted would necessarily force AT&T Wireless to do more than required by the FCC: to provide more towers, clearer signals or lower rates. The statute specifically insulates these FCC decisions from state court review.

Bastien's complaint contains other allegations sounding more like state law claims. For instance, in Paragraph 9, AT&T Wireless allegedly "knew that it could not deliver what it was promising." In Paragraph 23, AT&T Wireless violated: "a) Its contracts; and b) The implied duty of good faith and fair dealing under such contracts." In Paragraph 25, AT&T Wireless allegedly "b) [m]isrepresented the quality and benefits of its products and services; c) [concealed] the material facts that it did not have the capacity to handle the volume of its cellular calls." While these charges appear more like traditional state law claims, they are all founded on the fact that AT&T Wireless had not built more towers and more fully developed its network at the time Bastien tried to use the system. The

reason AT&T Wireless had not more fully developed its network was because it was in compliance with the FCC schedule for building towers and establishing service in the Chicago market. In this complaint, Bastien has repackaged challenges to the FCC-approved plan in a state law wrapper, but the contents of that package remain challenges to the FCC approved plan.

An indication of Bastien's transparent attempt to recast federal claims as state law fraud and breach of contract actions can be seen in the complete absence of any details in the pleading regarding the particular promises or representations made by AT&T Wireless. Normally we do not scrutinize a complaint so closely because under our system of notice pleading, we set a very low threshold to determine whether a complaint states a claim upon which relief can be granted. See Jackson v. Marion County, 66 F.3d 151, 153-54 (7th Cir. 1995). Such is not the case when a complaint is challenged for want of jurisdiction. On a motion to dismiss under Rule 12(b)(1), the court is not bound to accept the truth of the allegations in the complaint, but may look beyond the complaint and the pleadings to evidence that calls the court's jurisdiction into doubt. Commodity Trend Service, Inc. v. Commodity Futures Trading Commission, 149 F.3d 679, 685 (7th Cir. 1998); Aquafaith Shipping, Ltd. v. Jarillas, 963 F.2d 806, 808 (5th Cir. 1992). Scrutinizing Bastien's complaint more closely, we note that the complaint alleges "misrepresentation" and "concealing" but does not offer specific instances of the words used by AT&T Wireless that would qualify as such. Rather we are left with facts suggesting AT&T Wireless had not sufficiently built up its network and the bare conclusory allegation that this constituted misrepresentation and fraud. That is not adequate to earn the plaintiff the protection of the well-pleaded complaint rule.

III.  Conclusion

Bastien's complaint, although fashioned in terms of state law actions, actually challenges the rates and level of service offered by AT&T Wireless, an area specifically reserved to federal regulation. The district court was correct in removing the case from state

court and denying Bastien's motion to dismiss and remand the case under Rule 12(b)(1). Because Bastien did not appeal the grant of AT&T Wireless's motion to dismiss for failure to state a claim, the order of the district court dismissing the complaint is AFFIRMED.

/1 Bastien has indicated that he "want[s] to stand or fall on [his] claim that this is really a suit under state law," and we therefore do not need to address the doctrine of primary jurisdiction and whether the case should be directed to the FCC or retained by the federal district court.