**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-1872**

ROBERT JOHNSON; MARY JOHNSON,

        Plaintiffs - Appellants,

        v.

AMERICAN TOWERS, LLC; FARMERS TELEPHONE COOPERATIVE, INC.;
CELLCO PARTNERSHIP, d/b/a Verizon Wireless; SPRINT CELLULAR
COMPANY OF SOUTH CAROLINA; SPRINT COMMUNICATIONS COMPANY
L.P.; ALLTEL COMMUNICATIONS, LLC; T-MOBILE USA TOWER LLC; T-
MOBILE USA INC.; AT&T INC.; AT&T MOBILITY LLC; AT&T MOBILITY
SERVICES, LLC; VERIZON WIRELESS, LLC; VERIZON WIRELESS
SERVICE LLC; VERIZON WIRELESS OF THE EAST LP; TRACFONE
WIRELESS, INC.,

        Defendants – Appellees,

        and

CELLCO TELEPHONE COMPANY OF THE SOUTHEAST, LLC; ALLTEL
COMMUNICATIONS, INCORPORATED; ALLTEL MOBILE COMMUNICATIONS
OF SOUTH CAROLINA, INC.,

        Defendants.

Appeal from the United States District Court for the District of
South Carolina, at Columbia.   Cameron McGowan Currie, Senior
District Judge.   (3:13-cv-00789-CMC)

Argued: October 29, 2014        Decided:   March 25, 2015

Before SHEDD and FLOYD, Circuit Judges, and DAVIS, Senior
Circuit Judge.

Affirmed by published opinion. Judge Floyd wrote the opinion, in which Judge Shedd and Senior Judge Davis joined.

———————————

**ARGUED:** John E. Parker, PETERS, MURDAUGH, PARKER, ELTZROTH & DETRICK, PA, Hampton, South Carolina, for Appellants. Scott H. Angstreich, KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C., Washington, D.C.; Jeremy Cook Hodges, NELSON MULLINS RILEY & SCARBOROUGH LLP, Columbia, South Carolina, for Appellees. **ON BRIEF:** William F. Barnes, III, PETERS, MURDAUGH, PARKER, ELTZROTH & DETRICK, PA, Hampton, South Carolina, for Appellants. John M.S. Hoefer, WILLOUGHBY & HOEFER, P.A., Columbia, South Carolina; Andrew E. Goldsmith, KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C., Washington, D.C., for Appellees Cellco Partnership, Sprint Cellular Company of South Carolina, Alltel Communications, LLC, Verizon Wireless, Verizon Wireless Service LLC, and Verizon Wireless of the East LP. Robert W. Foster, Jr., NELSON MULLINS RILEY & SCARBOROUGH LLP, Columbia, South Carolina, for Appellee Farmers Telephone Cooperative, Inc. Daniel R. Settana, Jr., Janet Brooks Holmes, MCKAY, CAUTHEN, SETTANA & STUBLEY, P.A., Columbia, South Carolina, for Appellees AT&T Inc., AT&T Mobility LLC, and AT&T Mobility Services, LLC. Eric G. Fosmire, THE FOSMIRE LAW FIRM, LLC, Columbia, South Carolina, for Appellees T-Mobile USA Tower LLC and T-Mobile USA, Incorporated. Elbert S. Dorn, Myrtle Beach, South Carolina, Burl F. Williams, NEXSEN PRUET, LLC, Greenville, South Carolina, for Appellee American Towers, LLC. David S. Cox, Matthew E. Tillman, WOMBLE CARLYLE SANDRIDGE & RICE, LLP, Charleston, South Carolina, for Appellee Sprint Communications Company L.P. Daniel B. White, GALLIVAN, WHITE & BOYD, P.A., Greenville, South Carolina, for Appellee TracFone Wireless, Inc.

———————————

FLOYD, Circuit Judge:

This suit presents a novel but flawed legal theory applied to admittedly tragic facts. Robert Johnson, a prison guard in Bishopville, South Carolina, was shot multiple times in his home. The ensuing investigation revealed that the attack was ordered by an inmate at the prison where Mr. Johnson worked using a contraband cell phone. Mr. Johnson survived the attack and, with his wife, later brought suit. The Johnsons did not, however, sue the typical defendants – i.e., the shooter or any prison inmate or employee. Rather, the Johnsons sued several cellular phone service providers and owners of cell phone towers. According to the Johnsons, these defendants are liable for Mr. Johnson's injuries because they were aware that their services facilitated the illegal use of cellphones by prison inmates and yet failed to take steps to curb that use.

In this appeal by the Johnsons, we address two issues: (1) whether the district court properly concluded that it had federal jurisdiction over the Johnsons' state-law claims; and (2) if so, whether the district court properly dismissed the Johnsons' claims on the merits. For the reasons set forth below, we affirm the judgment.

3

I.

A.

Captain Robert Johnson was an employee of the Lee Correctional Institution in Lee County, South Carolina. As a correctional officer, Mr. Johnson was responsible for seizing cell phones and other contraband from inmates.

In March 2010, an assailant entered Mr. Johnson's home and shot him six times in the chest and stomach. His wife, Mary Johnson, witnessed the attack. Mr. Johnson survived but underwent eight surgeries and months of rehabilitation.

The U.S. Attorney for the District of South Carolina concluded after a thorough investigation that a group of inmates ordered the attack in retaliation for Mr. Johnson's prior confiscation of their contraband cell phones and other goods.[1] The U.S. Attorney further found that an unnamed inmate had used a cell phone to communicate with the shooter, Sean Echols. That inmate also paid Echols. Echols eventually pleaded guilty to conspiracy to use interstate facilities in murder-for-hire under 18 U.S.C. § 1958(a). United States v. Echols, No. 3:13-cv-

---

[1] Press Release, U.S. Attorney's Office, District of South Carolina, Man Pleads Guilty to Conspiracy to Commit Murder-for-Hire in Shooting of Correctional Officer (Apr. 9, 2014), available at http://www.fbi.gov/columbia/press-releases/2014/man-pleads-guilty-to-conspiracy-to-commit-murder-for-hire-in-shooting-of-correctional-officer.

00211-JFA (D.S.C. Aug. 13, 2014) (judgment of the district court).

B.

In February 2013, the Johnsons filed suit in South Carolina state court seeking to recover under state-law negligence and loss of consortium theories. They seek to recover against two groups of Defendants: (1) wireless service providers;[2] and (2) owners of towers that lease space to those providers for the provisions of wireless service.[3] The Johnsons alleged that both sets of Defendants "were aware of the illegal use of cellphones by inmates using signals emitted and received at the defendants' towers" and that "this use created an unreasonable risk of harm

---

[2] The wireless service providers named in this case are: Sprint Cellular Company of South Carolina, Sprint Communications Company, L.P, Alltel Communications, LLC, Alltel Communications, Inc., Alltel Mobile Communications of South Carolina, Inc., T-Mobile USA Tower LLC, T-Mobile USA, Inc., AT&T Inc., AT&T Mobility LLC, AT&T Mobility Services, LLC, Verizon Wireless (VAW) LLC, Verizon Wireless Services, LLC, Verizon Wireless of the East LP, and TracFone Wireless, Inc. The Johnsons also named Alltel Mobile Communications of South Carolina, Inc. and Alltel Communications, Inc., neither of which are parties to this appeal because they no longer exist. J.A. 28-32.

[3] The tower owner defendants named in this case are: American Towers, LLC, Farmers Telephone Cooperative, Inc., Cellco Telephone Company of the Southeast, LLC, Cellco Partnership d/b/a Verizon Wireless, and T-Mobile USA. The Johnsons also named Cellco Telephone Company of the Southeast, LLC, which is not a party to this appeal because it no longer exists. J.A. 26-27.

5

to others." Appellants' Br. at 6. The Johnsons sought compensatory and punitive damages.

The Defendants timely removed the case to federal court, asserting both federal question jurisdiction under 28 U.S.C. § 1331 and complete diversity under 28 U.S.C. § 1332. In April 2013, the Johnsons moved to remand the case to state court. The district court denied the Johnsons' motion on two grounds. First, the district court concluded it had federal question jurisdiction because the Federal Communications Act ("Communications Act") completely preempted all of the Johnsons' state law claims. Second, the district court found that it had diversity jurisdiction because the only non-diverse defendants were fraudulently joined and the amount in controversy exceeded $75,000.

On June 19, 2013, the district court consolidated the Defendants' motions to dismiss and granted the motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure. It did so for three reasons: (1) the Johnsons' claims were barred by express and conflict preemption; (2) South Carolina law did not impose a duty on Defendants to prevent inmates from illegally using their cell phone services; and (3) the Johnsons' claims were implausible and so did not meet pleading standards. This appeal followed.

II.

The Johnsons contend that the district court lacked subject matter jurisdiction over their state law claims, and thus erred in denying their motion to remand. We review questions of subject matter jurisdiction de novo, including questions related to the propriety of removal. Lontz v. Tharp, 413 F.3d 435, 439 (4th Cir. 2005). As set forth below, we find that the Communications Act does not completely preempt the Johnsons' claims. Accordingly, the district court erred in finding the existence of federal question jurisdiction. Nevertheless, because the district court properly exercised jurisdiction on the basis of diversity of citizenship of the parties, however, we affirm the district court's denial of the Johnsons' motion to remand.

A.

We first consider whether the district court correctly found federal question jurisdiction. 28 U.S.C. § 1331. The district court determined it had jurisdiction on this basis because the Johnsons' claims were completely preempted by the Communications Act. In doing so, the district court relied on three provisions of the Act: (1) Section 332, the Act's preemption provision; and (2) Sections 201 and 207, which when read in conjunction allow private parties to recover damages

7

resulting from a common carrier's breach of its obligation to ensure that "all . . . practices . . . for and in connection with communication service" are "just and reasonable." 47 U.S.C. §§ 201(b), 207, 332. This was error.

At the outset, we note that complete preemption only applies in a "very narrow" range of cases. Marcus v. AT&T Corp., 138 F.3d 46, 54 (2d Cir. 1998). "The limited applicability of the complete preemption doctrine is evidenced by the fact that the [Supreme] Court has only approved its use in three areas," none of them pertinent to the Communications Act. Id. In fact, we have recognized a presumption against finding complete preemption. Lontz, 413 F.3d at 440 (citing Custer v. Sweeney, 89 F.3d 1156, 1167 (4th Cir. 1996)). This presumption — of course a rebuttable one — exists, in part, because "[f]ederalism concerns strongly counsel against imputing to Congress an intent to displace 'a whole panoply of state law in [a certain] area' absent some clearly expressed direction." Custer, 89 F.3d at 1167 (quoting Painters of Phila. Dist. Council No. 21 Welfare Fund v. Price Waterhouse, 879 F.2d 1146, 1153 n.7 (3d Cir. 1989)).

The foundation of the district court's complete preemption finding is § 332 of the Communications Act. See 47 U.S.C. § 332(c)(3)(A) ("[N]o State or local government shall have any authority to regulate the entry of or the rates charged by any

8

commercial mobile service or any private mobile service . . . ."); Farina v. Nokia, Inc., 625 F.3d 97, 105-06 (3d Cir. 2010) ("The FCC's jurisdiction extends to wireless telephone service, and FCC authority over the technical aspects of radio communications is 'exclusive.'" (citations omitted)). As set forth in Section III.A, infra, we agree that Section 332 expressly preempts the Johnsons' claims on the merits. But complete preemption and express preemption are different animals.

Complete preemption and ordinary preemption on the merits "are not as close kin jurisprudentially as their names suggest." Lontz, 413 F.3d at 440. Unlike ordinary preemption, which does not create federal subject matter jurisdiction, complete preemption has the effect of "transform[ing]" a state-law cause of action into one arising under federal law because Congress has occupied the field so thoroughly as to leave no room for state-law causes of action at all. Caterpillar Inc. v. Williams, 482 U.S. 386, 399 (1987). Put differently, complete preemption is a "jurisdictional doctrine," while "ordinary preemption simply declares the primacy of federal law, regardless of the forum or the claim." Lontz, 413 F.3d at 440. Complete preemption applies only when "Congress has clearly manifested an intent to make causes of action . . . removable to

9

federal court." Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 66 (1987).

As we have repeatedly recognized, "'the sine qua non of complete preemption is a pre-existing federal cause of action that can be brought in the district courts . . . .'" In re Blackwater Sec. Consulting, LLC, 460 F.3d 576, 584 (4th Cir. 2006) (quoting Lontz, 413 F.3d at 441). Indeed, the Supreme Court has emphasized that for the purposes of complete preemption, the preempting statute must provide "the exclusive cause of action" for claims in the area that the statute preempts. Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 9 (2003) (emphasis added). The district court relied on §§ 201 and 207 of the Communications Act, which, in the district court's view, provide a federal cause of action that is the exclusive remedy for the Johnsons' claims. 47 U.S.C. §§ 201, 207.[4] We disagree.

As an initial matter, §§ 201 and 207 allow recovery only against common carriers. Under the Communications Act, "'common carriers' are entities that must provide [transmission]

---

[4] Section 207 provides a remedy for the subject matter in § 201(b), which includes "all charges, practices, classifications and regulations for and in connection with such communication service." 47 U.S.C. § 201(b); Global Crossing Telecomms., Inc. v. Metrophones Telecomms., Inc., 550 U.S. 45, 53 (2007) ("[T]he purpose of § 207 is to allow persons injured by § 201(b) violations to bring federal-court damages actions.").

10

service[s] to the public without discrimination and are heavily regulated by the FCC." Pinney v. Nokia, Inc., 402 F.3d 430, 450 (4th Cir. 2005) (citation omitted). The parties do not contend that the tower owners provide any wireless service, and we therefore conclude that these defendants cannot be treated as common carriers. As a result, they cannot be sued under Sections 201 and 207.

On the other hand, the wireless service provider defendants are common carriers and so can be sued under §§ 201 and 207. But nothing suggests that Congress intended these sections to provide the exclusive remedy for the Johnsons' state-law claims against those defendants. See Beneficial Nat'l Bank, 539 U.S. at 8. Rather, the Communication Act's savings clause suggests just the opposite. 47 U.S.C. § 414 ("Nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies."). As we have held, this savings clause counsels against a finding that Congress intended to sweep aside all state claims in a particular area. Pinney, 402 F.3d at 450. This conclusion is consistent with that of other courts addressing this issue. See In re NOS Commc'ns, MDL No. 1357, 495 F.3d 1052, 1058 (9th Cir. 2007) (stating that the Communication Act's savings clause "is fundamentally incompatible with complete field preemption; if

11

Congress intended to preempt the entire field of telecommunications regulation, there would be nothing for section 414 to 'save' and the provision would be mere surplusage" (citing Marcus, 138 F.3d at 54)); accord Smith v. GTE Corp., 236 F.3d 1292, 1313 (11th Cir. 2001). Consistent with these decisions and our precedent in Pinney, we hold that the Communications Act does not "wholly displace[]" state law in this area because it explicitly preserved state-law remedies. Beneficial Nat'l Bank, 539 U.S. at 8.

As the district court noted, Pinney concerned wireless devices, not wireless service.[5] In our view, however, this is a distinction without a difference. The savings clause applies to the entirety of Chapter 5 of the Communications Act, including § 332 – the section at issue here regarding wireless service.

---

[5] The district court observed that in Pinney, we distinguished wireless device claims, which are not preempted by the Communications Act, and claims that would "obstruct or burden a wireless service provider's ability to provide a network of wireless service coverage." 402 F.3d at 456. Although § 332(c)(3)(A) preempts state regulation of "the entry of or the rates charged by any commercial mobile service," our statement in Pinney appears in the context of a discussion of express preemption, not complete preemption. We concluded that § 332 does not expressly preempt claims about wireless devices while not deciding the exact contours of the Communications Act's express preemption of state-law barriers to market entry. This analysis was separate from our discussion of complete preemption in Pinney.

The savings clause demonstrates that congressional intent to completely preempt this area of law is neither clear nor manifest.[6] Accordingly, we hold that the district court erred in its reliance on complete preemption principles when it denied the motion to remand.[7]

B.

We now turn to diversity jurisdiction. The Johnsons named two non-diverse defendants in their complaint: Charleston-North Charleston MSA and Farmers Telephone Cooperative. Normally, this would defeat removal on the basis of diversity jurisdiction under 28 U.S.C. § 1332 because complete diversity of citizenship

---

[6] A close reading of § 207 similarly suggests that Congress did not intend for that provision to be the exclusive remedy for claims against common carriers. The section states that a person "may either" bring a complaint to the FCC or "may bring suit" in district court, but "such person shall not have the right to pursue both such remedies." 47 U.S.C. § 207. The section states that a party may bring an action to the FCC or district court, but cannot seek relief from both, rather than suggesting that the FCC and the district court are the sole places to bring an action.

[7] The district court relied on Bastien v. AT&T Wireless Servs., Inc., 205 F.3d 983, 986-87 (7th Cir. 2000), which held that at least some areas of state regulation in the wireless service context are completely preempted by federal law. Bastien reads the savings clause in § 414 narrowly in order to find that § 332 completely preempts state law in the areas of market entry or rates. Id. Because Bastien is fundamentally inconsistent with our decision in Pinney, however, we decline to adopt its analysis here.

13

– meaning a plaintiff cannot be a citizen of the same state as any defendant – is necessary for a federal court to exercise diversity jurisdiction. Mayes v. Rapoport, 198 F.3d 457, 464 (4th Cir. 1999). The district court, however, found it could properly retain subject matter jurisdiction under the fraudulent joinder doctrine. Under that doctrine, naming non-diverse defendants does not defeat diversity jurisdiction. Rather, the fraudulent joinder doctrine "effectively permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." Id. at 461.

"The party alleging fraudulent joinder bears a heavy burden—it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." Hartley v. CSX Transp., Inc., 187 F.3d 422, 424 (4th Cir. 1999). The removing party must show either "'outright fraud in the plaintiff's pleading of jurisdictional facts' or that 'there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court.'" Id. (quoting Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993)).

The Defendants in this action rely on the latter, "no possibility" formulation, in which a plaintiff's claim against a

14

non-diverse defendant "need not ultimately succeed to defeat removal; only a possibility of a right to relief need be asserted." Marshall, 6 F.3d at 233. This standard heavily favors the Johnsons, who must show only a "glimmer of hope" of succeeding against the non-diverse defendants. Mayes, 198 F.3d at 466. Moreover, when considering whether the Johnsons have satisfied this standard, we must resolve all legal and factual issues in their favor. Id. at 465. "[T]his standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Id. (quoting Hartley, 187 F.3d at 424). Even under this rigorous standard, however, we conclude that the Johnsons have no possibility of succeeding against either of the non-diverse defendants.

It is undisputed that the first non-diverse defendant – Charleston-North Charleston MSA Limited Partnership (formerly the Sprint Cellular Company of South Carolina) – has no federal license to provide cell phone service in Lee County, South Carolina, where the prison is located.[8] Because Charleston-North Charleston MSA could not have carried the alleged cell phone call ordering the attack on Mr. Johnson, it could not possibly

---

[8] The Johnsons do not appear to contest this issue on appeal and did not dispute the Defendants' showing in district court.

be liable under the Johnsons' legal theories.[9] There is thus <u>no possibility</u> that the Johnsons could succeed against Charleston-North Charleston. <u>Hartley</u>, 187 F.3d at 424. Accordingly, the district court properly disregarded Charleston-North Charleston MSA for diversity purposes.

## C.

The Johnsons' claims against the second non-diverse defendant, Farmers Telephone Cooperative, present a more complex question on fraudulent joinder. Farmers Telephone Cooperative (Farmers) leases a tower to wireless carriers, who in turn place equipment on the tower to transmit wireless signals. The tower does not itself transmit signals. The district court found that the Communications Act preempts state law, and so the Johnsons could not prevail on their state-law claim against Farmers as a matter of law. The Johnsons therefore did not have a glimmer of hope of success against Farmers in state court.

We agree that a finding of federal preemption would mean that the Johnsons would have "no possibility" of success on

---

[9] It is possible that Charleston-North Charleston MSA could have completed a call from another wireless service provider, but in that instance, it could not know that the call originated from inside the prison. The Johnsons' theory of liability hinges on the Defendants' awareness of an unreasonable risk of contraband cell phone calls.

16

their state-law complaint against Farmers.  Accordingly, we now turn to the federal preemption question underlying this case. In doing so, we conclude that the Communications Act preempts the Johnsons' claims against Farmers.  Because Farmers was fraudulently joined, the district court did not err in denying the Johnsons' motion to remand.

The Supremacy Clause of the Constitution provides, "the Laws of the United States . . . shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. Const. art. VI, cl. 2. "Preemption fundamentally is a question of congressional intent, and when Congress has made its intent known through explicit statutory language, the courts' task is an easy one."  English v. Gen. Elec. Co., 496 U.S. 72, 79-80 (1990) (citation omitted).

Here, Congress made its intent known when in 1996 it amended the Communications Act of 1934 to provide, "no State or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service or any private mobile service."  47 U.S.C. § 332(c)(3)(A).  The Communications Act also grants the FCC "control . . . over all the channels of radio transmission."  Id. § 301; see also Farina, 625 F.3d at 105 ("The FCC's jurisdiction extends to wireless telephone service, and FCC authority over the technical

17

aspects of radio communications is 'exclusive.'" (citations omitted)).

We have acknowledged that in amending the Communications Act, Congress preempted state laws that not only regulate market entry, but also state laws that "obstruct or burden a wireless service provider's ability to provide a network of wireless service coverage." Pinney, 402 F.3d at 456 (citing Bastien v. AT&T Wireless Servs., Inc., 205 F.3d 983, 987 (7th Cir. 2000)). State law is taken here to include common-law tort duties. Riegel v. Medtronic, Inc., 552 U.S. 312, 324 (2008) ("'[C]ommon-law liability is 'premised on the existence of a legal duty,' and a tort judgment therefore establishes that the defendant has violated a state-law obligation.").[10] State common-law duties,

---

[10] We emphasize that the Communications Act does not preempt all claims that might give rise to an award of damages in the wireless service context. In other words, the Communications Act does not completely immunize wireless service providers from all civil suits under state law. The D.C. Circuit held, for example, that not all state laws having the effect of increasing the cost of doing business constitute state regulation of telecommunications. Cellular Telecomms. Indus. Ass'n v. F.C.C., 168 F.3d 1332, 1336 (D.C. Cir. 1999). The FCC agrees. In re Wireless Consumers Alliance, Inc., 15 F.C.C.R. 17021, ¶¶ 33–34 (2000). Not all tort suits against wireless carriers are prohibited by the Communications Act. Id. at ¶ 34 ("Such litigation costs and awards are simply a cost of doing business."). In this case, however to find in the Johnsons' favor, we would be compelled to articulate a common-law tort duty that would have a real effect on the provision of wireless service in South Carolina, something expressly prohibited by the Communications Act.

18

such as the one that the Johnsons propose, that conflict with federal laws or regulations, are therefore preempted. Gibbons v. Ogden, 22 U.S. 1, 37-38 (1824).

In Pinney, we held that § 332 preempts state laws that "obstruct or burden a wireless service provider's ability to provide a network of wireless service coverage." Pinney, 402 F.3d at 456 (citing Bastien, 205 F.3d at 987). We find that the Johnsons' putative state-law duty on Farmers is consequently preempted by the express language of the Communications Act. A common-law tort duty on the part of Farmers would "obstruct or burden a wireless service provider's ability" to provide coverage. Cell phone tower owners would be forced to actively monitor wireless networks and prevent any calls, or perhaps only calls initiated on contraband devices, coming from inside a South Carolina prison, limiting the provision of wireless service in those areas. Pinney, 402 F.3d at 456.

Similarly, finding a duty on the part of the wireless service providers would override the FCC's authority in granting licenses to provide wireless service. The Communications Act authorizes the FCC to "establish areas or zones to be served by" wireless service providers. 47 U.S.C. § 303(h). Although it is true that the Communications Act does not disturb state and local authority to zone and regulate land use, a common-law tort duty is not zoning or land use. See id. § 332(c)(7)(A)

19

("[N]othing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities."). As legislative history makes clear, Congress intended for the Communications Act to refrain from preempting local land use regulations, not common-law tort duties. Murray v. Motorola, Inc., 982 A.2d 764, 773-74 (D.C. 2009). Although the Communications Act grants wide latitude to states and localities to enact land use and zoning laws, a common-law tort duty simply stretches § 332(c)(7)(A) too far. Instead, the Johnsons' legal theory would force cell phone tower owners to impede the FCC's authority in establishing wireless service areas.

In short, we find that the Communications Act clearly preempts the Johnsons' state-law tort claim against Farmers as a matter of law. Consequently, the Johnsons do not have a "glimmer of hope" of succeeding in state court on their claim against Farmers. The parties are in complete diversity, and consequently, the district court had jurisdiction over the remaining Defendants.

## III.

Having determined that the district court properly exercised jurisdiction over the Johnsons' claims, we next

20

consider whether it also correctly held that those claims failed to state a claim as a matter of law. We review the district court's grant of the defendants' motion to dismiss de novo. See Spaulding v. Wells Fargo Bank, N.A., 714 F.3d 769, 776 (4th Cir. 2013).

As discussed below, we affirm the district court on three grounds. First, the Communication Act's express language preempts the Johnsons' claims. Second, the Johnsons' claims are barred by conflict preemption. Third and finally, the Johnsons' claims are implausible.[11]

A.

As we discussed above, the Communications Act provides for a comprehensive federal scheme to ensure access to wireless telecommunications services. Pinney, 402 F.3d at 457 ("Congress enacted § 332 to ensure the availability of a nationwide network of wireless service coverage, more specifically, to develop the infrastructure necessary to provide wireless services."). Section 332(c)(3)(A) of the Communications Act provides, "no State or local government shall have any authority to regulate

---

[11] The district court also found that there is no state-law duty under South Carolina law. We do not need to address the state-law issues to resolve the case and so decline to do so here.

the entry of or the rates charged by any commercial mobile service or any private mobile service." 47 U.S.C. § 332(c)(3)(A). We found in Pinney that § 332 preempts state laws that "obstruct or burden a wireless service provider's ability to provide a network of wireless service coverage." 402 F.3d at 456 (citation omitted). Consistent with our discussion in Section II.C., supra, we find that the Johnsons' putative state-law duty on the part of the other Defendants is also preempted by the Communications Act. A common-law tort duty would obstruct or burden a wireless service provider's ability to provide coverage because wireless service providers would be forced to actively monitor their networks and prevent any calls coming from inside a South Carolina prison, limiting the provision of wireless service in those areas.

## B.

The district court also concluded that the Johnsons' claim is implicitly preempted as a matter of conflict preemption. Conflict preemption applies to state law "when compliance with both federal and state regulations is a physical impossibility, or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Pinney, 402 F.3d at 457 (quoting Hillsborough Cnty. v. Automated Med. Labs., Inc., 471 U.S. 707, 713 (1985)).

22

The Communications Act establishes a comprehensive federal scheme for the provision of wireless service coverage.[12]   47 U.S.C. § 332.  The federal scheme's purpose is to "ensure the availability of a nationwide network of wireless service coverage . . . [and] to develop the infrastructure necessary to provide wireless services."  Pinney, 402 F.3d at 457.  To further this purpose, some (but not all) areas of state law are preempted.  Id.  To ensure the availability of service coverage, the Act prohibits a person from willfully interfering with wireless signals without authorization from the FCC.  47 U.S.C. § 333. ("No person shall willfully or maliciously interfere with or cause interference to any radio communications of any station

---

[12] In Pinney we described the federal scheme as follows:

> Thus, § 332(1) provides factors that the FCC must consider in managing the spectrum used for wireless services, 47 U.S.C. § 332(a); (2) classifies wireless service providers that provide wireless service to the public for profit as "common carriers" (subjecting them to numerous duties under the FCA), 47 U.S.C. § 332(c)(1)(A); (3) prevents states from regulating "the entry of or the rates charged by" wireless service providers, 47 U.S.C. § 332(c)(3)(A); and (4) limits in certain respects the ability of states and local zoning authorities to regulate the "placement, construction, and modification" of facilities that provide wireless service, 47 U.S.C. § 332(c)(7).

402 F.3d at 457.

licensed or authorized by or under this chapter or operated by the United States Government.").

The district court concluded that a state-law obligation to block calls originating from contraband cell phones inside the prison would necessarily conflict with § 333. The FCC has repeatedly interpreted § 333 to prohibit any form of "jamming" of wireless signals, even by prison authorities. In a recent rulemaking, the FCC has undertaken to make it easier for prisons to address the problem of contraband cell phones.[13] The FCC was responding to a petition by the South Carolina Department of Corrections and other states' prison authorities, which requested that it be given the power to jam signals inside prisons. The FCC declared, "[T]he manufacture, importation, marketing, sale, or operation of radio signal jamming devices within the United States is prohibited, except for the sale to or use by the Federal Government." Id. at ¶ 19 (emphasis added). The FCC is considering other means to address the problem of contraband cell phones without allowing prison authorities to jam wireless signals themselves, such as making

_____

[13] Notice of Proposed Rulemaking, Promoting Technological Solutions to Combat Contraband Wireless Device Use in Correctional Facilities, 28 FCC Rcd. 6603 (2013) ("Contraband Wireless Device NPRM"), available at http://transition.fcc.gov/Daily_Releases/Daily_Business/2013/db0502/FCC-13-58A1.pdf.

24

it easier for wireless service providers to remotely deactivate contraband cell phones.  Id. at ¶ 3.  This method does not involve jamming the wireless signals themselves.[14]

The Johnsons argue that the prohibition against interference does not apply if the wireless service provider is interfering with its own signals.  In support, they cite two cases for the proposition that § 333 applies only to third parties and not the actual service providers.  United States v. Gerritsen, 571 F.3d 1001 (9th Cir. 2009); United States v. Baxter, 841 F. Supp. 2d 378 (D. Me. 2012).  Although those cases indeed addressed claims in which third parties interfered with wireless service, they did not hold that § 333 applied only to third parties.

Section 333 states that "no person" shall interfere with "any radio communications."  47 U.S.C. § 333.  The Defendants argue that "no person" includes first parties and therefore prohibits self-interference.  A more persuasive reading of this section of the Communications Act is to read the entire sentence together:  no person shall interfere with any radio communications, including his or her own.  The use of the word

---

[14] Notably, Congress has passed legislation making cell phones contraband in federal prisons but has not permitted any jamming of wireless signals.  Cell Phone Contraband Act of 2010, Pub. L. No. 111-225, 124 Stat. 2387 (2010) (codified at 18 U.S.C. § 1791).

25

"any" includes one's own communications. If the statute intended to exclude self-interference, the statute would state "any other radio communications" rather than "any radio communications."

In sum, it would be impossible for the Defendants to simultaneously comply with federal prohibitions on blocking wireless signals and a putative state-law duty to block wireless signals to and from certain cell phones inside the prison. This is the very definition of conflict preemption. Compliance with both a putative common-law duty and federal law would be a "physical impossibility" and therefore the former is preempted by the Communications Act. Fla. Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-143 (1963).

C.

Finally, we affirm the district court's finding that the Johnsons' claims would also fail due to the "speculative nature of their allegations." J.A. 369. In the district court's view, "the Johnsons' argument suggests only a desire to conduct a fishing expedition to determine if there is any factual basis for asserting claims against any Defendants . . . . This is not enough." J.A. 370. Although we review rulings on motions to dismiss de novo, accept all the factual allegations in the complaint as true, and draw all reasonable inferences in the

26

Johnsons' favor, the complaint must still meet applicable pleading standards. Spaulding, 714 F.3d at 776. The Johnsons have failed to allege sufficient facts to set forth a plausible claim for relief; consequently, we affirm the district court.

"A complaint must be dismissed if it does not allege 'enough facts to state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atl. Corp v. Twombly, 550 U.S. 544, 570 (2007)). A properly pleaded complaint must offer more than "'naked assertions' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (brackets omitted) (quoting Twombly, 550 U.S. at 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In other words, a complaint must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id.

The Johnsons' complaint contains the bare assertion that "an inmate at the prison using a cellphone ordered a co-conspirator outside of the prison to kill Captain Johnson." J.A. 23. The Johnsons have failed to offer any further factual enhancement to support their claims against the Defendants. For example, the Johnsons' complaint does not identify the wireless service provider who carried the alleged call or when the alleged call occurred. Without more factual allegations, it is

27

impossible for a district court to assess the Johnsons' claims. See Twombly, 550 U.S. at 565 n.10 (noting that the defective complaint "mentioned no specific time, place, or person involved in" the alleged illegal activity); Kendall v. Visa U.S.A., Inc., 518 F.3d 1042, 1048 (9th Cir. 2008) (complaint must "answer the basic questions: who, did what, to whom (or with whom), where, and when?"); see also Fed. R. Civ. P. 84 & App. Form 11 (providing a blank space for the "date" and "place" of the injury in model complaint form for negligence). A wireless service provider would likely be unable to determine whether it carried the alleged call without more identifying information.

We acknowledge, however, that the recent conclusion of the U.S. Attorney's investigation into the attack may provide additional information bolstering the Johnsons' claims. The Johnsons are free, if additional information supportive of one or more non-preempted claims exists, to file a new lawsuit, as the district court dismissed their complaint on this ground without prejudice. As currently drafted, however, the complaint resembles a prohibited fishing expedition rather than a properly pleaded complaint. Artuso v. Vertex Pharm., Inc., 637 F.3d 1, 8 (1st Cir. 2011).

IV.

For the foregoing reasons, the judgment is

AFFIRMED.