Present: Lemons, C.J., Mims, Powell, Kelsey, McCullough, and Chafin, JJ., and Millette, S.J.

DONNA KINSEY, ET AL.

v. Record No. 200703

OPINION BY
CHIEF JUSTICE DONALD W. LEMONS
JULY 15, 2021

VIRGINIA ELECTRIC AND POWER COMPANY

FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
Bruce D. Albertson, Judge

In this appeal, we consider whether the Circuit Court of Rockingham County ("circuit court") erred when it sustained Virginia Electric and Power Company's ("VEPCO") plea in bar regarding conflict preemption and dismissed complaints filed by Donna and Sarah Kinsey (collectively, the "Kinseys") alleging common law personal injuries.

I. Allegations and Proceedings

Donna and Sarah Kinsey are mother and daughter. The Kinseys moved into their house in Rockingham County in 2009. The Kinseys lived in their home from 2009 to 2012 "without incident or unusual illness."

According to the Kinseys, VEPCO started an "experimental" program to install smart meters on residential dwellings in 2011-2012. Smart meters transfer data through radio frequency transmissions to receivers operated by the electric utility. In March 2012, VEPCO installed two smart meters on the Kinseys' property. One was attached to the outside of the Kinseys' home, "adjacent to living areas," and the other smart meter was installed on the outside of the barn 100 yards from the home. The smart meter installed on the home was located on an "exterior wall directly opposite the home office and work area of" Donna, "which is the same room that [Donna] and her husband slept in." Donna's desk and work area "were about 2 feet from the installed smart meter." A transmission relay device was mounted on a nearby utility

pole "about 225 feet from the home." VEPCO did not inform the Kinseys of the installation. VEPCO did not install a smart meter on any other home in the Kinseys' neighborhood. Unlike the Kinseys, the other properties had gated entrances.

The Kinseys fell ill in March 2012 with similar symptoms of unknown origin or cause. Donna experienced "mood swings, trouble concentrating, insominia, memory loss, ringing in her ears, and hair loss on her head and eyelashes." (spelling error in original). Sarah had "significant rapid hair loss, brain fog, and inability to concentrate" along with cold sensitivity in her extremities, chronic fatigue, chemical sensitivity, and sensitivity to bright light and flashing lights." Sarah also developed "an auto immune endocrine disorder and epilepsy, with no family history of these conditions." Neither Donna nor Sarah had "such health issues before this time." In November 2012, Donna began researching possible causes of the ringing in her ears. In her searches on the internet, she discovered references to smart meters. Donna looked at the pictures of smart meters on the internet, then went outside and discovered for the first time that such a meter was installed on her home.

Donna then began a long effort to communicate with VEPCO to remove the smart meters, but she was ultimately unsuccessful. VEPCO refused to remove the smart meters, asserting that Kinsey was "part of an experimental program" and maintained that the meters were safe. Additionally, VEPCO stated that removal would not be considered until an "opt-out" program was offered. No specific date for the availability of the opt-out program was given. When the Kinseys continued to complain about adverse health effects, a VEPCO representative offered to move the smart meter several feet away from the home and place it on a pole. However, the representative informed the Kinseys that they would be required to pay for the expense of the move.

The Kinseys attempted to opt-out of the experimental program once notified of their ability to do so. Nevertheless, VEPCO would not remove the installed smart meter. VEPCO indicated it would instead "disable" the transmitting capability of the smart meter. This effort failed and VEPCO informed the Kinseys that the "'disabled' smart meter was not disabled, but was in fact continuing to transmit data and was not working properly." VEPCO eventually agreed to remove the smart meter from the home. VEPCO then replaced it with another smart meter with its transmission capability disabled.

Donna filed the first action in this case in 2014. She non-suited that action and timely refiled on August 21, 2015. Donna did not request service of process on VEPCO until she requested it by letter filed July 29, 2016. VEPCO filed a demurrer, plea in bar, and answer to the complaint as one pleading on August 23, 2016. VEPCO thereafter filed a notice of removal to the United States District Court for the Western District of Virginia ("District Court") on September 1, 2016. The District Court remanded the case to state court on December 22, 2016, opining that the federal court did not have subject matter jurisdiction over the case under the doctrines of substantial federal question or complete preemption. *Kinsey v. Va. Elec. & Power Co.*, 2016 WL 7422257, at *10 (W.D. Va. Dec. 22, 2016). The District Court did not otherwise rule on the pleadings filed by Donna or VEPCO. Donna's minor daughter, Sarah, filed her complaint on December 29, 2016. VEPCO filed a demurrer, plea in bar, and answer to Sarah's complaint as one pleading on January 24, 2017. The circuit court granted a motion to consolidate the briefing and argument on the demurrers in both Donna and Sarah's cases.

VEPCO then filed an amended demurrer on June 21, 2018. In an order dated July 26, 2018, the circuit court "overrule[d] the Amended Demurrers on the issue of preemption," noting that the "ruling on preemption is confined to demurrer," because the "plea in bar [wa]s not

3

before [the court.]"[*] The circuit court also overruled the demurrer in part as to the counts alleging actual or constructive fraud and negligence. Finally, the circuit court sustained the demurrer in part and struck identical counts in the complaints alleging "failure to warn and/or concealment of a potentially dangerous condition." The court then consolidated the cases for discovery and common motions but denied a consolidated trial.

VEPCO's plea in bar asserted that the Kinseys' claims were barred by conflict preemption. The circuit court set a briefing schedule for the plea in bar, and the Kinseys requested a jury to decide disputed facts and expert issues. The circuit court reserved a jury for the plea in bar hearing.

In December 2019, the Federal Communications Commission ("FCC") filed an environmental impact analysis of proposed guidelines for device radio frequency ("RF") emissions, which included emissions from smart meters. Federal Communications Commission, Resolution of Notice and Inquiry, Second Report and Order, Notice of Proposed Rulemaking, and Memorandum Opinion and Order No. FCC 19-126 ("FCC Order 19-126") (Dec. 4, 2019), *available at* https://docs.fcc.gov/public/attachments/FCC-19-126A1.pdf (last visited June 23, 2021). After publication of FCC Order 19-126, the Kinseys moved the circuit court to cancel the scheduled jury trial for the plea in bar hearing, and to instead "decide the issue of preemption as a matter of law." The Kinseys asserted that "VEPCO's failure to properly install, maintain and operate the smart meter devices" caused their injuries. Further, the Kinseys contended that "the

---

[*] This Court has handled preemption arguments raised as a demurrer, a plea in bar, and as a combination of a demurrer and plea in bar. *Krantz v. Int'l Air Line Pilots Ass'n*, 245 Va. 202, 209 (1993) (demurrer); *Gibbs v. Newport News Shipbuilding & Drydock Co.*, 284 Va. 677, 679 (2012) (plea in bar); *Anthony v. Verizon Va. Inc.*, 288 Va. 20, 32 (2014) (demurrer and plea in bar); *Maretta v. Hillman*, 283 Va. 34, 39 (2012) (demurrer and plea in bar).

plea in bar raises a factual dispute over whether the smart meter functioned properly." The circuit court granted the motion and released the jury.

In VEPCO's briefs and oral argument, it relied heavily on a report by its purported electrical engineering expert. The Kinseys filed a motion in limine to exclude the proposed expert based on VEPCO's failure to file an expert designation. The circuit court granted the motion in limine.

The circuit court heard argument on the plea in bar on January 8, 2020. During the hearing, the Kinseys requested leave to amend their complaints, but withdrew their request on January 9, 2020, by letter, stating that the "complaint sufficiently claims improper maintenance and operation of the meters as the grounds for the fraud and negligence claims."

In a letter opinion dated January 21, 2020, the circuit court granted VEPCO's plea in bar on conflict preemption and dismissed the Kinseys' complaints. The circuit court adopted VEPCO's arguments as the rationale for its ruling. The circuit court held that "[w]hen arguing the [p]leas in [b]ar, [the Kinseys] attempted to recast their [c]omplaints as negligence and fraud actions flowing from the malfunction of a specific smart meter placed on the Kinsey home," and "claimed anew that this particular smart meter is the instrument of harm." It held that the "[c]omplaints themselves do not make this allegation." The circuit court viewed the Kinseys' actions as a facial challenge to the FCC emission guidelines and, therefore, found that the claims were barred by conflict preemption. The Kinseys appealed to this Court. We granted the Kinseys' appeal on the following assignments of error:

1. The trial court erred in dismissing Petitioners' common law claims for personal injury as preempted by federal law.

2. The trial court erred by misreading Plaintiff's Complaint in that the Kinseys alleged harm caused by improper installation, operation, and maintenance of the smart meter

5

equipment which claims do not conflict with, or obstruct the accomplishment of Congressional purpose.

## II. Analysis

### A. Standard of Review

"A plea in bar asserts a single issue, which, if proved, creates a bar to a plaintiff's recovery." *Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019) (citation omitted). Because no evidence was presented on the plea in bar, "the trial court, and the appellate court upon review, must rely solely upon the pleadings in resolving the issue presented," which we review de novo. *See Tomlin v. McKenzie*, 251 Va. 478, 480 (1996).

"[U]nder conflict preemption Congress impliedly preempts state law when it 'actually conflicts with federal law.'" *Pinney v. Nokia, Inc.*, 402 F.3d 430, 453 (4th Cir. 2005) (citation omitted). Because federal preemption claims require the application and interpretation of federal law and the determination of Congressional intent, we review preemption pleas de novo. *Anthony. v. Verizon Virginia, Inc.*, 288 Va. 20, 29 (2014).

### B. Conflict Preemption

The Supreme Court of the United States has defined three forms of federal preemption. One of these forms, conflict preemption, consists of two types. The Supreme Court has found conflict preemption "where compliance with both federal and state regulations is a physical impossibility for one engaged in interstate commerce." *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963). The Supreme Court has also determined that federal law preempts state law when, "under the circumstances of [a] particular case, [state] law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941). In this case, VEPCO asserted that the Kinseys'

6

claims fell into the second type of conflict preemption—creating an obstacle to the accomplishment of Congressional purpose.

A preemption analysis must begin with the federal law itself. In preemption cases, "particularly where Congress has legislated in a field which the States have traditionally occupied, courts start with the assumption that the historic police powers of the States are not to be superseded by a federal act unless that was the clear and manifest purpose of Congress." *Wyeth v. Levine*, 555 U.S. 555, 555 (2009).

Title 47 of the United States Code contains the Federal Communications Act ("FCA") and defines the structure of the FCC. Chapter 5 of Title 47 covers wire and radio communication. Section 332 provides, in part:

> (iv) No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions.

47 U.S.C. § 332(c)(7)(B)(iv). The FCC's regulations sought to balance numerous factors and establish a uniform governing standard for safe levels of RF emissions. Consequently, RF emissions are governed by the FCC.

On December 4, 2019, during the pendency of this case, the FCC released the environmental impact analysis of proposed guidelines for device RF emissions, including emissions from smart meters in FCC Order 19-126. This order clarifies that RF emissions from smart meters are regulated by the FCC. The FCC guidelines do not, however, specify how a smart meter should be installed on a residence.

The FCA provides a savings clause in section 414 that states "[n]othing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by

statute, but the provisions of this chapter are in addition to such remedies." 47 U.S.C. § 414. This savings clause applies to all of Chapter 5 of the FCA, and applies to both wireless service and wireless devices. *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 702-03 (4th Cir. 2015).

The Kinseys' complaints seek monetary damages for personal injuries arising from exposure to RF emissions from smart meters. Their complaints do not specify any particular error in the installation, operation, or maintenance of the meters. Instead, their complaints are directed at the RF emissions of the smart meters which allegedly caused the Kinseys' conditions. The complaints did not sufficiently allege that the installation of the smart meters caused the injury. Although the savings clause preserves state law tort claims, we hold that conflict preemption bars the Kinseys' claims because the complaints target RF emissions which are governed by the FCC.

## C. Recasting of the Complaints

The circuit court concluded that the Kinseys "attempted to recast their [c]omplaints as negligence and fraud actions flowing from the malfunction of a specific meter on the Kinsey home," and then held that the "[c]omplaints themselves do not make this allegation." We agree. The Kinseys did not allege that the smart meter was the "instrumentality of harm" in their fraud and negligence counts in their complaints. The complaints instead broadly challenge the RF emissions of the smart meters.

## III. Conclusion

For the reasons stated, we will affirm the judgment of the circuit court.

*Affirmed.*

8